NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11965

COMMONWEALTH  vs.  KIM HENRY.


       Essex.       February 10, 2016. - August 8, 2016.

   Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
                           Hines, JJ.



Restitution.  Practice, Criminal, Probation, Restitution.
     Supreme Judicial Court, Superintendence of inferior courts.



     Complaint received and sworn to in the Salem Division of
the District Court Department on November 7, 2013.

     A proceeding to determine restitution was had before
Michael C. Lauranzano, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Rebecca Kiley, Committee for Public Counsel Services, for
the defendant.
     Kenneth E. Steinfield, Assistant District Attorney, for the
Commonwealth.
     Matthew R. Segal & Jessie J. Rossman, for the American
Civil Liberties Union Foundation of Massachusetts, amicus
curiae, submitted a brief.

GANTS, C.J.  This case presents two issues on appeal: first, whether a defendant's ability to pay should be considered by a judge in deciding whether to order restitution as a condition of probation and in deciding the amount of any such restitution; and second, where goods are stolen from a retail store, whether the amount of the victim's actual economic loss for purposes of restitution is the replacement value or the retail sales value of the stolen goods.  As to the first issue, we hold that in determining whether to impose restitution and the amount of any such restitution, a judge must consider a defendant's ability to pay, and may not impose a longer period of probation or extend the length of probation because of a defendant's limited ability to pay restitution.  As to the second issue, we hold that, in cases of retail theft, the amount of actual economic loss for purposes of restitution is the replacement value of the stolen goods unless the Commonwealth proves by a preponderance of the evidence that the stolen goods would otherwise have been sold, in which case the retail sales value is the better measure of actual loss.[1]

Background.  The defendant was employed as a cashier at a Walmart department store in Salem.  A Walmart video camera captured the defendant "free-bagging" items; that is, with

---

[1] We acknowledge the amicus brief submitted by the American Civil Liberties Union of Massachusetts.

certain customers, she placed some store items into bags without scanning the items at the cash register, so that these customers received these items without paying for them. As a result, in November, 2013, a complaint issued in the Salem Division of the District Court Department alleging that the defendant stole the property of Walmart having a value of more than $250 pursuant to a single larcenous scheme on various dates between July 20 and September 4, 2013, in violation of G. L. c. 266, § 30 (1). In April, 2014, the defendant admitted to facts sufficient to warrant a finding of guilty, and the judge continued her case without a finding for eighteen months, with restitution to be determined at a later date.[2] The defendant was placed on administrative probation for eighteen months, with a special condition that she have no contact with Walmart.

At a restitution hearing in September, 2014, the defendant stipulated that the loss to Walmart was $5,256.10, and a judge (who was not the plea judge) ordered that restitution in that amount be paid. However, in October, 2014, the defendant filed a motion to revise and revoke the order of restitution, which

---

[2] The defendant recommended that her case be continued without a finding for eighteen months. The prosecutor recommended that a guilty finding be entered, that she be placed on probation for a period of two years, and that she be ordered as a condition of probation to pay Walmart $5,256.10 in restitution. The defendant accepted the judge's disposition even though it exceeded her recommendation. See G. L. c. 278, § 18.

was allowed, and a new restitution hearing was held in November, 2014, before yet another judge.  At this evidentiary hearing, the Commonwealth offered testimony from Ronald Capistran, the loss protection manager at the Salem Walmart, who calculated that the retail sales price of the items stolen totaled $5,256.10.  He estimated that the "markup" on most of the items sold in the store was "somewhere between [seven per cent] and probably [fifteen per cent]" but, in a rare case, "it could be [fifty]" per cent.  The defendant testified that she was "discharged" from Walmart in September, 2013, after working there as a cashier for nearly twelve years.  She received unemployment benefits for approximately three months following her termination, but was found ineligible for such benefits after a department of unemployment assistance hearing and was ordered to reimburse the Commonwealth for the benefits she had received.  At the time of the restitution hearing, she had been unable to find employment and had no income or government assistance of any kind.  She had been evicted from her apartment and was staying with someone, but not paying rent.  She testified that she "free-bagged" the items only for friends, and received only fifty dollars once for having done so.

     The prosecutor argued that restitution should be based on the retail sales value of the items stolen because the theft was at the point of sale, and Walmart was deprived of the value of

the goods that should have been paid by the customer. The prosecutor also argued that the amount of restitution should not be reduced based on the defendant's inability to pay because the defendant "by her actions created her inability to pay in that she was fired from a job by stealing." The defendant argued that the actual loss to Walmart is the replacement cost of the stolen goods, not their retail price, because Walmart is not entitled to recover in restitution for its lost profits. The defendant also argued that she should not be ordered to pay restitution because she was financially unable to pay, noting that, if ordered to pay "any figure remotely near" the amount of restitution sought, she will be in violation of her probation because of her inability to pay. The judge declared that the loss is measured by the retail loss and ordered that restitution in the amount of $5,256 be paid during the period of probation at a rate to be determined by the probation department.[3] The defendant timely appealed from this order, and we allowed the defendant's application for direct appellate review.

Discussion. A judge may order a defendant to pay restitution to the victim as a condition of probation provided that the "[r]estitution is limited to economic losses caused by the defendant's conduct and documented by the victim."

---

[3] The judge waived the probation supervision fee and the indigent counsel fee.

Commonwealth v. McIntyre, 436 Mass. 829, 833-834 (2002). See Commonwealth v. Nawn, 394 Mass. 1, 6 (1985) ("There is no question that restitution is an appropriate consideration in a criminal sentencing"). "The procedure used to determine the amount of restitution or reparation must be reasonable and fair." Id. at 6-7. The prosecution should disclose prior to the hearing the amount of restitution it seeks. Id. at 7, citing People v. Gallagher, 55 Mich. App. 613, 620 (1974). Where the defendant does not stipulate to the amount, the judge should conduct an evidentiary hearing at which "the Commonwealth bears the burden of proving by a preponderance of the evidence the amount of the victim's losses." Nawn, 394 Mass. at 7-8. At such a hearing, the victim may testify regarding the amount of the loss, and the defendant may cross-examine the victim, with such cross-examination limited to the issue of restitution. Id. at 8. The defendant may rebut the victim's estimate of the amount of loss with expert testimony or other evidence. Id. at 7.

1. Ability to pay. In deciding whether to order restitution and, if so ordered, the amount, the judge should "consider whether the defendant is financially able to pay the amount ordered." Nawn, 394 Mass. at 7, citing Model Sentencing and Corrections Act § 3-601(d), 10 U.L.A. 322 (Supp. 1984), and ABA Standards Relating to Probation § 3.2(d) (1970). "The

amount of restitution is not merely the measure of the value of the goods and money stolen from the victim by the defendant; . . . the judge must also decide the amount that the defendant is able to pay and how such payment is to be made." Nawn, supra at 8-9.

In practice, this means that, at the close of the evidentiary hearing, the judge must make two findings in deciding whether to order restitution as a condition of probation and, where ordered, the amount of restitution to be paid during the period of probation. First, the judge must determine the amount of the victim's actual economic loss causally connected to the defendant's crime. See McIntyre, 436 Mass. at 834. The Commonwealth bears the burden of proof as to this finding. See Nawn, 394 Mass. at 7-8. The order of restitution may not exceed this amount. See Commonwealth v. Rotonda, 434 Mass. 211, 221 (2001). Second, the judge must determine the amount the defendant is able to pay. See Nawn, supra at 8-9. Where a defendant claims that he or she is unable to pay the full amount of the victim's economic loss, the defendant bears the burden of proving an inability to pay. See Commonwealth v. Porter, 462 Mass. 724, 732-733 (2012) (defendant bears burden of persuasion regarding indigency, in part because "[a] criminal defendant is the party in possession of all material facts regarding her own wealth and is asserting a

negative").  Cf. United States v. Fuentes, 107 F.3d 1515, 1532 (11th Cir. 1997) (regarding restitution, "the defendant must establish her financial resources and needs by a preponderance of the evidence").

We require a judge to consider the defendant's ability to pay when setting the restitution amount because a judge may order restitution in a criminal case only as a condition of probation, and therefore the collection of restitution is enforced by the threat or imposition of a criminal sanction for violation of a probation condition.  See Commonwealth v. Denehy, 466 Mass. 723, 737 (2014); Commonwealth v. Goodwin, 458 Mass. 11, 15 (2010).  Cf. G. L. c. 258B, § 3 (u) (victim shall be informed of "right to pursue a civil action for damages relating to the crime, regardless of whether the court has ordered the defendant to make restitution to the victim").  A defendant can be found in violation of a probationary condition only where the violation was wilful, and the failure to make a restitution payment that the probationer is unable to pay is not a wilful violation of probation.  See Commonwealth v. Canadyan, 458 Mass. 574, 579 (2010) ("where there was no evidence of wilful noncompliance, a finding of violation of the condition of wearing an operable [global positioning system (GPS)] monitoring device was unwarranted, and is akin to punishing the defendant for being homeless"); Commonwealth v. Gomes, 407 Mass. 206, 212-

213 (1990) (imposition of default costs permitted only when default is wilful).  Cf. Bearden v. Georgia, 461 U.S. 660, 669 n.10 (1983) ("Numerous decisions by state and federal courts have recognized that basic fairness forbids the revocation of probation when the probationer is without fault in his failure to pay the fine" [footnote omitted]).

To allow a judge to impose a restitution amount that the defendant cannot afford to pay simply dooms the defendant to noncompliance.  Such noncompliance may trigger a notice of probation violation even though a probationer cannot be found in violation for failing to pay a restitution amount that the probationer cannot reasonably afford to pay.  See Canadyan, supra; Gomes, supra.  Not only would a notice of violation under such circumstances waste the time of the court, but it imposes upon the blameless probationer the risk of an arrest on a probation warrant, of payment of a warrant fee, of being held in custody pending a hearing, and of probation revocation if the judge were to fail to recognize that inability to pay is a defense to the alleged violation.  See G. L. c. 276, § 87A; Fay v. Commonwealth, 379 Mass. 498, 504 (1980); Rule 3 of the District/Municipal Courts Rules for Probation Violation Proceedings, Mass. Ann. Laws Court Rules (LexisNexis 2015-2016).

Burdening a defendant with these risks by imposing restitution that the defendant will be unable to pay violates

the fundamental principle that a criminal defendant should not face additional punishment solely because of his or her poverty. See Canadyan, supra; Gomes, supra at 212-213.  Cf. Bearden, 461 U.S. at 668-669 ("if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available" [footnote omitted]).  To avoid this unlawful result, we require the judge to consider the defendant's ability to pay when initially setting the restitution amount.[4]  See State v. Blank, 570 N.W.2d 924, 927 (Iowa 1997) ("A court's assessment of a defendant's reasonable ability to pay is a constitutional prerequisite for a criminal restitution order").  Cf. Fuentes, 107 F.3d at 1529 ("Although a sentencing court may order restitution even if the defendant is indigent at the time of sentencing, . . . it may not order restitution in an amount that the defendant cannot repay").

---

[4] Where, because of the defendant's limited ability to pay, the restitution amount is less than the victim's total economic loss, nothing bars the victim from filing a civil action and obtaining a judgment against the defendant for the full amount of the loss.  The victim may seek to collect on this judgment through a civil execution.  See Commonwealth v. Klein, 400 Mass. 309, 311 (1987); Commonwealth v. Malick, 86 Mass. App. Ct. 174, 178 (2014); Fidelity Mgt. & Research Co. v. Ostrander, 40 Mass. App. Ct. 195, 199 (1996).  See also G. L. c. 258B, § 3 (u).

A judge may not ignore a defendant's ability to pay in determining restitution under the rationale that, if the defendant were to violate the probation condition of payment of restitution because of an inability to pay, the judge would not revoke probation but would instead extend the period of probation to allow the defendant more time to pay.  Probation "serves as a disposition of and punishment for a <u>crime</u>; it is not a civil program or sanction" (emphasis in original). <u>Commonwealth</u> v. <u>Cory</u>, 454 Mass. 559, 566 (2009).  It punishes a defendant by ordering the defendant to comply with conditions deemed appropriate by the sentencing judge and, "[i]f a defendant violates one or more conditions of probation, a judge may revoke his probation and sentence him to a term of imprisonment for his underlying conviction, or return the defendant to probation, with new or revised conditions." <u>Commonwealth</u> v. <u>Goodwin</u>, 458 Mass. 11, 15 (2010).

An extension of the period of probation punishes a defendant in two ways.  First, it extends the restrictions on a defendant's liberty arising from probation.  Under the general conditions of probation, a probationer may be required to report periodically to his or her probation officer, may not leave the State without permission, and must pay a monthly probation fee or, in lieu of payment, provide community service, unless payment is waived by the judge because of the order of

restitution.  See G. L. c. 276, § 87A; Commentary to Rules 2 and 4 of the District/Municipal Courts Rules for Probation Violation Proceedings, Mass. Ann. Laws Court Rules, at 77-78, 86 (LexisNexis 2015-2016).  A probation officer may search the home of a probationer by obtaining a warrant supported only by reasonable suspicion rather than probable cause.  See Commonwealth v. LaFrance, 402 Mass. 789, 792-793 (1988).  Special conditions, where ordered, may impose further restrictions and obligations, such as drug and alcohol testing and evaluation, participation in treatment programs, GPS monitoring, and home confinement curfews.  See G. L. c. 276, § 87A.

Second, where a probationary period is extended, and a defendant commits a new crime during the extended period, the defendant, in addition to being convicted and sentenced for the new crime, can have his or her probation revoked and be sentenced anew on the conviction for which he or she was placed on probation.  See Goodwin, 458 Mass. at 17.  And probation may be revoked for the commission of a new crime based on proof by a preponderance of the evidence, so a defendant may be found not guilty at trial of committing the new crime where the evidence fell short of proof beyond a reasonable doubt but still have his or her probation revoked because a judge found it more likely than not that he or she committed the new crime.  See

Commonwealth v. Hartfield, 474 Mass. 474, 481-483 (2016). Thus, extending the length of a probationary period because of a probationer's inability to pay subjects the probationer to additional punishment solely because of his or her poverty. See Canadyan, 458 Mass. at 579; Gomes, 407 Mass. at 212-213. We need not reach the question whether an extension of the length of probation in such circumstances violates the Massachusetts Declaration of Rights, because we invoke our superintendence power to declare that a judge may not extend the length of probation where a probationer violated an order of restitution due solely to an inability to pay. [5,6]

For the same reasons, equal justice means that the length of probation supervision imposed at the time of sentence should not be affected by the financial means of the defendant or the ability of the defendant to pay restitution. See Superior Court

---

[5] A judge remains free to revoke probation or extend the term of probation where a probationer violates a condition of probation by willfully failing to pay a restitution amount he or she had the ability to pay. See Bearden v. Georgia, 461 U.S. 660, 668 (1983) ("If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection"); .Commonwealth v. Avram A., 83 Mass. App. Ct. 208, 212-213 (2013).

[6] We acknowledge that extending the length of probation in such circumstances has not been recognized to be in violation of Federal constitutional law. See Bearden, 461 U.S. at 674 (where defendant on probation is unable to pay fine, court may extend time for payment).

Working Group on Sentencing Best Practices, Criminal Sentencing in the Superior Court:  Best Practices for Individualized Evidence-Based Sentencing, at 15 (Mar. 2016) (Superior Court Best Practices for Sentencing) ("An extended period of supervision for the purpose of collecting money can be particularly troublesome since it necessarily means that greater burdens are imposed on poor offenders compared to those with economic resources").  To ensure that a defendant does not face a longer probationary period because of his or her limited means, the ability to pay determination should be made only after the judge has determined the appropriate length of the probationary period based on the amount of time necessary to serve the twin goals of rehabilitating the defendant and protecting the public.  See Cory, 454 Mass. at 567; Commonwealth v. Lapointe, 435 Mass. 455, 459 (2011).  See also State v. Farrell, 207 Mont. 483, 498-499 (1984) (to impose longer suspended sentence because of defendant's indigency in order to extend time to pay restitution would violate due process and fundamental fairness).  Cf. Superior Court Best Practices for Sentencing, supra ("probationary terms should generally be limited in duration, extending only long enough to facilitate a period of structured reintegration into the community").  Once the judge has determined the appropriate length of the probationary period, restitution may be a condition of probation

for the length of that period at the maximum monthly amount that the defendant is able to pay, provided the total amount does not exceed the actual loss.  The amount of restitution ordered should not exceed this monthly amount multiplied by the months of probation, even if that amount is less than the amount of financial loss sustained by the victim.  The monthly amount must be determined by the judge; it cannot be delegated to the probation department.  But the judge may be aided in that determination by the guidance of the probation department.[7]

---

[7] For example, where a defendant has been found guilty of shoplifting and the judge determines that the economic loss to the victim is $5,000, the judge might decide that the defendant's risk of future criminal conduct is most effectively diminished by two years of treatment for the defendant's drug and mental health problems, and that the defendant should therefore be placed on supervised probation for two years, with special conditions of drug and mental health treatment.  Once the judge has decided on this two-year probationary period, the judge must then consider the defendant's ability to pay and determine the amount of restitution that the defendant is able to pay.  The judge might determine that, for example, the defendant has the ability to pay fifty dollars per month for each of the twenty-four months.  If the defendant successfully completes the probation period and meets the required monthly payments, the defendant's probation must be terminated, even though the defendant paid only $1,200 in restitution; probation may not be extended so that the victim may be paid the balance of $3,800.  The victim may initiate a civil action to recover the unpaid balance of economic loss.

Where a judge determines that there is no reason to impose probation other than to collect restitution, a judge may impose a brief period of probation (e.g., thirty or sixty days) and determine how much of the economic loss the defendant is able to pay during that time period, and make that amount of restitution a condition of the brief period of probation.

The defendant may be required to report to his or her probation officer any change in the defendant's ability to pay, and the probation officer may petition the judge to modify the condition of probation by increasing or decreasing the amount of restitution due based on any material change in the probationer's financial circumstances.  See Goodwin, 458 Mass. at 18, quoting Buckley v. Quincy Div. of the Dist. Court Dep't, 395 Mass. 815, 820 (1985) ("A judge may add or modify a probation condition that will increase the scope of the original probation conditions only where there has been a 'material change in the probationer's circumstances since the time that the terms of probation were initially imposed,' and where the added or modified conditions are not so punitive as to significantly increase the severity of the original probation"). Cf. United States Sentencing Commission Guidelines Manual § 5B1.3(a)(7) (updated Nov. 2015) ("the defendant shall notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution").

Because we have not previously had the opportunity to articulate the legal standard for determining the defendant's ability to pay restitution, we do so here for the first time. In determining the defendant's ability to pay, the judge must consider the financial resources of the defendant, including

income and net assets, and the defendant's financial obligations, including the amount necessary to meet minimum basic human needs such as food, shelter, and clothing for the defendant and his or her dependents. Cf. G. L. c. 261, § 27A (a) (defining "[i]ndigent" with respect to civil litigants who seek waiver of court fees as person who is "unable to pay the fees and costs of the proceeding in which he is involved or is unable to do so without depriving himself or his dependents of the necessities of life, including food, shelter, and clothing"); United States v. McGiffen, 267 F.3d 581, 589 (7th Cir. 2001), citing United States v. Embry, 128 F.3d 584, 586 (7th Cir. 1997) (in determining whether defendant is financially able to contribute to cost of appointed counsel, judge must find "whether requiring the contribution would impose an extreme hardship on the defendant, whether it would interfere with his obligations to his family, and whether there were third parties with valid claims to the funds"); Museitef v. United States, 131 F.3d 714, 716 (8th Cir. 1997) (test of inability to pay costs of appointed counsel "is whether repayment would cause such financial hardship as to make it impractical or unjust . . . . The ability to pay must be evaluated in light of the liquidity of the individual's finances, his personal and familial needs, or changes in his financial circumstances"); Model Penal Code: Sentencing § 6.04(2) (Proposed Official Draft 2012) ("The total

severity of economic sanctions imposed on an offender may never exceed the offender's ability to pay while retaining sufficient means for reasonable living expenses and existing family obligations").

The payment of restitution, like any court-imposed fee, should not cause a defendant substantial financial hardship. See People v. Jackson, 483 Mich. 271, 275 (2009) (in determining defendant's ability to pay, judge must consider "whether the defendant remains indigent and whether repayment would cause manifest hardship"). Cf. S.J.C. Rule 3:10, § 10 (a), 475 Mass. (2016) ("The indigent counsel fee shall be waived where a judge, after the indigency verification process, determines that the party is unable without substantial financial hardship to pay the indigent counsel fee within 180 days"). Restitution payments that would deprive the defendant or his or her dependents of minimum basic human needs would cause substantial financial hardship. Where a defendant has been found indigent by the court for purposes of the appointment of counsel, a judge should consider carefully whether restitution can be ordered without causing substantial financial hardship.

A judge may also consider a defendant's ability to earn based on "the defendant's employment history and financial prospects," Nawn, 394 Mass. at 9, but a judge may attribute

potential income to the defendant only after specifically finding that the defendant is earning less than he or she could through reasonable effort.  Cf. Child Support Guidelines (Aug. 1, 2013) (allowing attribution of potential income "[i]f the Court makes a determination that either party is earning less than he or she could through reasonable effort").

2.  Order of restitution.  We now turn to the order of restitution in this case.  The judge here ordered restitution in the amount of the "retail loss" -- $5,256 -- even though the judge appeared to recognize that the defendant could not afford to pay that amount during the remaining period of her probation.[8] The judge did not set a monthly amount for the defendant to pay, but instead directed that the probation department set a payment schedule.  It was error for the judge to order restitution based only on the amount of loss, without considering whether the defendant was financially able to pay that amount during the remaining period of her probation.  It was also error for the

---

[8] When the restitution hearing was conducted, the defendant had only approximately eleven months remaining on her eighteen-month probation term.  The judge acknowledged that "you can't get blood out of a stone" and declared it "a sad case."  He said that he did not know whether "she can get a job somewhere at Dunkin' Donuts and pay it off that way."  He added, "I'm not sitting here feeling great about this, believe me.  I feel terrible. . . .  [B]ut a lot of that's on her. . . .  [I}t's tough.  I feel bad for her."

judge to delegate to the probation department the responsibility of establishing a payment schedule.

The consequence of these errors demonstrates why it is so important that the ability to pay be considered in setting the amount of restitution. Although the record does not reveal what payment schedule was established by the probation department, a notice of violation issued on May 11, 2015, for the defendant's failure to pay the required amount,[9] and a warrant issued for her arrest when she failed to appear at the probation violation hearing on May 22. The warrant was recalled on June 4, and she stipulated to a violation of her probation at a hearing on July 15, where the judge restored her to the same terms and conditions of probation, but ordered her to make restitution payments of thirty dollars per month. Although the defendant made the required monthly payments, on October 28, 2015, the day her probation was set to expire, the probation department issued a second notice of violation for her failure to pay the balance of her restitution, which the probation department calculated as $5,176.[10] The probation hearing on that notice of violation has

---

[9] The record on appeal reflects that the defendant made only two payments of five dollars for restitution.

[10] The Commonwealth correctly noted that this amount is in error, and that the amount of restitution due on that date was actually $5,126.

been continued in light of this pending appeal.[11]  If the defendant had not been poor, she could have afforded to pay the restitution in full before October 28, 2015, and would no longer have been subject after that date to the conditions of probation or the risk that a new crime might result in her being resentenced on her larceny from Walmart.  It was only because of her poverty that she was subject to the prolonged punishment of probation.

3.  Calculation of amount of economic loss.  The defendant claims that the judge erred, not only in failing to consider her ability to pay, but also in calculating the amount of restitution as the retail price of the items stolen.  We earlier noted that the payment of restitution "is limited to economic losses caused by the defendant's conduct and documented by the victim."  McIntyre, 436 Mass. at 834.  Because the purpose of restitution is to reimburse the victim "for any economic loss caused by the defendant's actions," Rotonda, 434 Mass. at 221, the amount of restitution may not exceed the victim's actual loss.  See McIntyre, supra.  See also United States v. Ferdman, 779 F.3d 1129, 1132 (10th Cir. 2015), quoting United States v. James, 564 F.3d 1237, 1243 (10th Cir. 2009) ("a district court may not order restitution in an amount that exceeds the actual

_____

[11] The record reflects that the defendant continued to make monthly restitution payments of thirty dollars at least through December, 2015.

loss caused by the defendant's conduct, which would amount to an illegal sentence constituting plain error"); United States v. Boccagna, 450 F.3d 107, 119 (2d Cir. 2006) ("Criminal restitution . . . is not concerned with a victim's disappointed expectations but only with [its] actual loss").

Where items are stolen from a retail store, the actual loss to the victim is the replacement value of the items, that is, their wholesale price, unless the Commonwealth proves by a preponderance of the evidence that the items would have been sold were they not stolen, in which event the actual loss would be the retail price of the items. See Ferdman, 779 F.3d at 1140 (considering restitution in the context of retail theft and holding that, "unless the Government can show the defendant's crime depleted the stock of a particular fungible or readily replaceable good . . . at a time when the victim might otherwise have been able to sell that good to a willing buyer, something akin to replacement or wholesale cost clearly appears the more accurate measure of actual loss"); People v. Chappelone, 183 Cal. App. 4th 1159, 1178-1179 (2010) (because prosecutor presented no evidence that store lost any sales of "mass-produced consumer goods" that it "sold in abundance," judge erred in awarding restitution in amount of retail value rather than replacement cost); State v. Islam, 359 Ore. 796, 807 (2016) ("[W]hen goods for sale are stolen from a retail seller and not

recovered, . . . the measure of 'economic damages' for the seller in a restitution proceeding is the same measure of damages that would be available to the seller in a tort action for conversion[:] . . . the reasonable market value of the goods converted at the time and place of conversion, and the market that determines that reasonable value is the market to which the seller would resort to replace the stolen goods, generally the wholesale market").  But see State v. Smith, 144 Idaho 687, 693 (Ct. App. 2007) ("the district court did not err in calculating the amount of restitution owed for the property stolen . . . by using the ascertained retail value of that property").[12]

Here, the record reflects that the theft occurred when the defendant's friends brought merchandise to her cashier counter, and that the defendant scanned some items and "free-bagged" others.  Although the record is silent as to how the defendant chose which items to "free-bag" and whether her friends knew in advance that she would "free-bag" particular items (or "free-bag" any), the judge reasonably could have inferred from the circumstances of the theft that, had the defendant scanned these

_____

[12] The concurrence contends that we should declare the retail price to be the best measure of actual loss in order to avoid placing an "extra burden" on victim retailers who seek restitution.  Post at    .  A retailer should be able to ascertain the wholesale price of stolen items as easily as the retail price, and we do not think it unfair to require the victim retailer to show that it is more likely than not that the stolen items would have been sold to obtain the higher retail price as the measure of restitution.

items at her counter, the friends would have paid for them. Therefore, because these items were stolen, not from inventory, but after they were brought to the cashier's counter, the judge reasonably could have found by a preponderance of the evidence that these items would have been sold had they not been stolen, and that the retail price of the items was the appropriate measure of the victim's actual loss. Although it is not plain that the judge applied this analysis in calculating the amount of restitution as the "retail loss," we conclude that the judge did not err in determining that the appropriate amount of the victim's actual loss in these circumstances was the aggregate retail price of the items stolen.

Conclusion. Because the judge erred in failing to consider the defendant's ability to pay in determining whether to order restitution and in determining the amount of restitution, we vacate the judge's restitution order and remand the case to the District Court for further proceedings consistent with this opinion.

So ordered.

CORDY, J. (concurring in part).  I agree that in setting an amount of restitution especially as a condition of a probation, a judge can and should take into account the likely ability of the defendant to pay that amount during the term of the probation imposed.  I disagree with the extra burden the court seems prepared to place on victims in establishing their economic loss in the context of thefts from a retail enterprise.

It seems to me that the economic loss incurred in that context should be presumed to be the retail price of the goods stolen, an amount that can be readily ascertained and presented to the court at a restitution hearing.  See State v. Smith, 144 Idaho 687, 693 (2007) (where retailer's items stolen, correct value for restitution will generally be retail market value of items).

The court suggests, however, that store owner victims are only entitled to restitution based on the retail prices of the items stolen if they can affirmatively prove by a preponderance of the evidence that the specific items would have been sold at the retail price if they had not been stolen.  This is an unnecessary burden in the ordinary case, and the cases cited by the court in support of its proposition are far from ordinary.

For example, in People v. Chappelone, 183 Cal. App. 4th 1159 (2010), the victim was the Target department store, and the principal defendant was an employee responsible for seeing that

damaged items and merchandise withdrawn by manufacturers were taken off the sales floor and returned to the appropriate entity for credit (or sold for deeply discounted prices to charitable organizations).  Id. at 1163, 1165-1166.  The theft at issue involved large quantities of such items awaiting disposal from storage.  Id. at 1165.

The court set restitution at $278,678, based on the full retail price of the goods.[1]  Id. at 1170.  On appeal, the Court of Appeal noted that the vast majority of stolen goods had in fact been recovered and returned to Target, and that the items, even before the theft, were identified by Target as damaged or otherwise not saleable at retail in any event.[2]  Id. at 1173-1174.  In these circumstances, the Court of Appeal reasonably held that valuing the merchandise at its full retail price highly inflated its actual value, and the recovery of that amount would result in a windfall to Target.  Id. at 1178-1179.  While the retail price was a "reasonable starting point the value should have been discounted to reflect the true nature of the goods."  Id. at 1175.  Consequently, the restitution order was vacated and the matter remanded for a further hearing.

---

[1] This amount also included $44,000 in expenses incurred by the Target department store during the investigation.  People v. Chappelone, 183 Cal. App. 4th 1159, 1170 (2010).

[2] The merchandise was ultimately donated by Target to charities.  See id. at 1171.

The facts in United States v. Ferdman, 779 F.3d 1129 (2015), are also exceptional.  The items at issue in that case were eighty-six cellular telephones that the defendant purchased at Sprint stores (fraudulently using various corporate accounts) for a "subsidized price" contingent on Sprint service agreements.  Id. at 1131, 1136.  The defendant then resold the telephones.  Id.

The trial judge ordered restitution in an amount based on the full retail price that could have been charged to a customer purchasing the telephones without a service agreement.[3]  Id. at 1131.  While the Appeals Court concluded that the trial court judge could ordinarily include lost retail sales and lost profits in a restitution order, the specific language of the Federal Mandatory Victims Restitution Act of 1996, as applied in this case, required more than just an unverified letter from Sprint stating that its losses were the full unsubsidized retail prices of the telephones, without any evidence from which the trial judge could infer that the defendant's theft caused the victim to lose actual retail sales at those prices.  Id. at 1136-1137, 1139-1140.

In sum, it is unnecessary in the present case to conclude anything other than that the retail price of goods stolen from a

---

[3] This amount included apparently $3,300 in investigative costs incurred by Sprint.  See United States v. Ferdman, 779 F.3d 1129, 1134 (2015).

retail store in the straightforward circumstances of this case was proper.