A jury convicted the defendant of two counts of larceny over $250.[2] On appeal she argues that the evidence was insufficient to support the convictions, that the judge erred in his response to a jury question, and that he erred by failing to hold a hearing to determine the defendant's ability to pay restitution. As the Commonwealth agrees, before ordering restitution, the judge should have assessed the defendant's ability to pay in accordance with Commonwealth v. Henry, 475 Mass. 117 (2016). We therefore vacate the restitution order and remand for further proceedings on that issue only. We reject the defendant's remaining arguments and affirm the judgments.
Background. We summarize the facts, and the reasonable inferences therefrom, in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). The defendant and her then-wife, Nancy Whitley,[3] planned to develop a retirement community and chose an old mill in Easthampton as the location. They formed a limited liability company called Possibilities and hired Attorney Benjamin Barnes to negotiate the purchase of the mill.
While negotiating the purchase, Barnes dealt primarily with the defendant "in terms of deposits and transfers of funds." Meanwhile, Nancy worked on the design and development of the condominiums. In December of 2006, Barnes and the mill owner reached a memorandum of understanding that Possibilities would purchase the mill for $1.1 million. After paying a nonrefundable deposit of $25,000, Possibilities entered into a purchase and sale agreement with the owner. The agreement required an additional nonrefundable deposit, but Possibilities was ultimately unable to pay the entire amount, even with several extensions of the closing date. As a result, the sale did not occur. The defendant signed the memorandum of understanding, the purchase and sale agreement, and the first closing date extension on behalf of Possibilities.
While Barnes was negotiating the purchase of the mill, the defendant and Nancy marketed the property and collected presale deposits from parties (buyers) interested in purchasing finished condominiums. The buyers each signed purchase and sale agreements that included the following clause:
"Deposits. All deposits made hereunder shall be held in an interest bearing escrow account by Benjamin A. Barnes, Esq., attorney for SELLER (the 'Escrow Agent') for the proper performance of this Agreement on the part of BUYER subject to the terms of this Agreement and shall be duly accounted for at the Time of Closing."
Barnes, however, had no knowledge of these agreements and did not have an escrow account to hold presale deposits.[4] Instead, the defendant and Nancy placed the deposits they received into either the Possibilities general business account or a client escrow account they opened in November of 2006.
In August of 2006, buyer Marcia Morrison paid Possibilities a deposit of $27,188. The money was initially deposited into the Possibilities client escrow account in December of 2006, but, less than two weeks later, the defendant transferred $25,000 to the business account. Morrison paid an additional $3,161 deposit in January of 2007, after meeting with the defendant and Nancy and signing a purchase and sale agreement. Again, the money was initially deposited into the client escrow account, but, within a few weeks, the defendant withdrew or transferred more than $45,000 from the account to use to finance the project.
Another buyer, Ashish Rajadhyaksha, dealt mostly with the defendant through electronic mail messages (e-mail). In December of 2006, the defendant e-mailed Rajadhyaksha, stating that "[a]ll deposits and reservations are held in escrow and are not used to finance any of the project" and "[s]hould the project dissolve, all deposits would be returned with interest accrued." The following month, the defendant repeated those assurances, stating that the deposits "[are] refundable if [Possibilities] choose[s] not to purchase [the mill]." After Rajadhyaksha expressed concern about environmental issues relating to the project, the defendant wrote, "We have ... gone to great length to write protective language into the agreement that gives an out if there are problems that are so great we could never remediate them.... I certainly would not put your funds in jeopardy ...." Rajadhyaksha responded that he would wire a deposit but "want[ed] to make sure that it'll stay as a deposit and not [be] handed over until the environmental thing is cleared up." The defendant replied, "We have a bank check generated that Benjamin [Barnes] holds until all terms of the [purchase and sale] are fulfilled."
On January 23, 2007, Rajadhyaksha wired a $55,000 deposit to the Possibilities business account. The same day, the defendant transferred $30,000 to Barnes to use toward the mill purchase. On March 23, 2007, Rajadhyaksha wired an additional deposit of $19,000 to the Possibilities business account. The next day, the defendant wrote a $21,000 check from that account to Barnes.
Rajadhyaksha did not sign a purchase and sale agreement until July of 2007, by which time the project had already failed.[5] Nonetheless, the purchase and sale agreement contained a rider allowing Possibilities to use Rajadhyaksha's deposits toward the purchase of the mill. Several months later, following a lack of activity, Rajadhyaksha questioned the defendant about the status of the project. The defendant assured him that "[i]f the property issues are not resolved in 90 days we will refund all deposits made."
In late 2007 the defendant "left" Nancy, and Nancy "had a lot of trouble reaching her over the next few months." Nancy became suspicious, checked the Possibilities client escrow account, and found it nearly depleted with a balance of only $10.01. She then wrote letters to each of the buyers, stating that only $10.01 remained in the account and that she "ha[d] been attempting to piece together what happened to [their] money." She further stated similarly in each of the letters, "Heather [the defendant] handled all the ... transactions related to these escrow accounts. It was my clear understanding that all deposits were to be left in escrow until closing time or until the project ended, so I cannot explain why there would have been any activity on your account after the initial deposit."
Discussion. 1. Sufficiency of the evidence. We review the evidence in the light most favorable to the Commonwealth to determine whether any "rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." Commonwealth v. Mendez, 476 Mass. 512, 523 (2017). Larceny by false pretenses "requires proof that (1) a false statement of fact was made; (2) the defendant knew or believed that the statement was false when [s]he made it; (3) the defendant intended that the person to whom [s]he made the false statement would rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property." Commonwealth v. McCauliff, 461 Mass. 635, 638-639 (2012), quoting from Commonwealth v. Mills, 436 Mass. 387, 396-397 (2002).
The defendant argues that there was insufficient evidence that she made a false statement to Morrison because Nancy was Morrison's main contact and it was Nancy who reviewed the purchase and sale agreement with Morrison and signed it. We disagree. A false statement may be written, see Commonwealth v. Reske, 43 Mass. App. Ct. 522, 525 (1997), and may be spoken by another person, even if that person is unaware of the falsity. See Commonwealth v. Lepper, 60 Mass. App. Ct. 36, 40 (2003). A defendant's knowledge of a false statement in a contract can "be inferred from several circumstances, weighed collectively," including the creation of the contract and the timing between the contract signing and the fraudulent use of funds. Commonwealth v. Kiernan, 348 Mass. 29, 46-47 (1964). These inferences "need only be reasonable and possible[, not] necessary or inescapable." Commonwealth v. Morgan, 449 Mass. 343, 349 (2007), quoting from Commonwealth v. Merola, 405 Mass. 529, 533 (1989).
Here, the "Deposits" clause in the purchase and sale agreement was false. The presale deposits were not given to Barnes, and he did not have an escrow account for Possibilities. There was evidence, moreover, from which the jury could find that the defendant knew of the false statement. When asked where she got the purchase and sale agreement, Nancy testified that "we worked on [it] ... [with] a real estate attorney, ... who was helping us with it." The terms "we" and "us" plainly referred to the defendant. The defendant was also present when Morrison reviewed and signed the agreement and, not long before, had represented to another prospective buyer, Rajadhyaksha, that all deposits would be held in escrow. A rational jury could infer from these circumstances that the defendant knowingly made a false statement to Morrison. See Kiernan, 348 Mass. at 46-47.[6]
The defendant next contends that she did not utter a false statement to Rajadhyaksha because the rider in the purchase and sale agreement stated that his deposits could be used toward the purchase of the mill. But Rajadhyaksha paid the deposits months before executing the agreement, based on repeated assurances from the defendant that they would remain in escrow and be returned if the project fell through. Despite those assurances, the defendant immediately transferred the deposits to use toward purchasing the mill. The defendant also falsely told Rajadhyaksha, after executing the agreement, that she would refund all deposits "[i]f the property issues are not resolved in 90 days." Based on this evidence, the jury could have found that the defendant made numerous false statements in relation to Rajadhyaksha's deposits.
2. Answer to jury question. During deliberations the jury asked: "If Nancy made the statement that the money would be held in escrow or wrote the P and S, should [the defendant] have been considered to have made a false statement: One, if she was present when it was discussed; two, if she knew about it; three: Simply because she is a business partner and they both signed cooperating agreement and are listed in management." After a discussion with counsel, the judge responded by saying:
"I cannot answer the question yes or no. I will tell you that the facts are entirely for you to resolve and that ... the factual questions must be resolved based upon the evidence and the facts that you find from the evidence and any reasonable inferences that you draw from those facts.
"As I told you, any false statement, if any, may have been made orally or in writing or by acts or in whatever way ideas may be communicated.
"The three items ... in your note are factors that you may consider but in the end, it's up to you to say whether or not the Commonwealth has proven beyond a reasonable doubt that the defendant made a false statement in accordance with the definition that I just gave you."
Because the defendant failed to raise any objection to the judge's answer, we review her challenge to determine whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967). "The proper response to a jury question must remain within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly." Commonwealth v. Wood, 469 Mass. 266, 293 (2014), quoting from Commonwealth v. Delacruz, 463 Mass. 504, 518 (2012). A judge is "not authorized to speak" to a factual issue. Commonwealth v. Nelson, 468 Mass. 1, 16 (2014).
We conclude that the judge's answer was appropriate. He properly recognized that the question implicated a factual issue regarding the defendant's knowledge. The defendant does not point to any legal error in the instructions, nor does she articulate how the judge should have responded to the question. Accordingly, as there was no error, there is no substantial risk of a miscarriage of justice. See ibid.
3. Restitution. The defendant argues, and the Commonwealth agrees, that the judge should have assessed the defendant's ability to pay restitution, as required by Henry, 475 Mass. 117. We likewise agree and therefore vacate the restitution order and remand the case for further proceedings consistent with Henry.
We do not, however, agree with the defendant that the case should also be remanded for resentencing. At the sentencing hearing, the parties were in agreement that the defendant's sentence should include a probationary period of ten years. Henry does not affect that agreement, and so remand for resentencing is unnecessary. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 125 ("the ability to pay determination should be made only after the judge has determined the appropriate length of the probationary period"). Cf. Commonwealth v. Buckley, 90 Mass. App. Ct. 177, 185 n.11 (2016) ("Because the judge found that the parties had reached an agreement on the amount of restitution that should be paid to the victim, the decision in Commonwealth v. Henry... does not affect our analysis").
Conclusion. The judgments are affirmed. The order requiring the defendant to pay restitution is vacated, and the matter is remanded for further proceedings consistent with this memorandum and order.
So ordered.
affirmed in part; vacated in part and remanded.

The jury acquitted the defendant of a third such count.

To avoid confusion, we will refer to Nancy Whitley by her first name.

Barnes testified that it was improper to take presale deposits before the required permits and financing were in place, without preserving the deposits in escrow.

Barnes testified that, as of that date, he was not aware of any ongoing discussions between Possibilities and the mill owner.

To the extent the defendant argues that the Commonwealth failed to prove intent, that argument is likewise unavailing. Within weeks of Morrison's paying the deposits, the defendant transferred the money out of the Possibilities client escrow account and used it to finance the project. This was sufficient to prove that the defendant intended for Morrison to rely on the false statement. See Kiernan, 348 Mass. at 46-47.