Following a Superior Court jury trial, the defendant, Richard A. Trott, Sr., was convicted of three counts of larceny over $250, in violation of G. L. c. 266, § 30(1). On appeal, the defendant argues that: (1) there was insufficient evidence to support the convictions; (2) the judge abused his discretion by admitting in evidence a financial spreadsheet that summarized the defendant's alleged use of embezzled funds; (3) the defendant was prejudiced by the venue of his trial; and (4) the order for restitution should be vacated. We affirm the defendant's convictions, but remand the case for a determination regarding the defendant's ability to pay restitution. See Commonwealth v. Henry, 475 Mass. 117 (2016).
Discussion. 1. Sufficiency of the evidence. To support a conviction of larceny the Commonwealth must prove "(1) the unlawful taking and (2) carrying away ... (3) of personal property of another (4) with the specific intent to deprive the person of the property permanently." Commonwealth v. Vickers, 60 Mass. App. Ct. 24, 27 (2003), citing Commonwealth v. Mills, 436 Mass. 387, 394 (2002). The defendant, who was the commander of chapter 96 of the Disabled American Veterans charitable organization (DAV 96 ),[2] claims that the evidence was insufficient to prove that he took funds without authorization and with the intent to permanently deprive DAV 96 of the funds.[3] Upon review, we look at the facts adduced at trial in the light most favorable to the Commonwealth and determine whether any rational trier of fact could have found that all elements of the crime had been proved. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).
a. Indictment 15-031-01 and 15-031-02. The first two indictments allege that the defendant stole money in the form of four checks, totaling $36,000, written on an account held by DAV 96. The Commonwealth presented evidence that the defendant signed four checks with values of $2,500, $5,500, $18,000, and $10,000, drawn from a DAV 96 account, payable to the Disabled Veterans Association of Cape Cod and the Islands (DVA Cape Cod).[4] The defendant opened an account, without authorization from DAV 96, in the name of the DVA Cape Cod. He listed himself as the only authorized signer, and his personal address was given for the account. The defendant then withdrew money from the DVA Cape Cod account and made similar deposits into his personal account. The jury could permissibly find that the transactions were unauthorized and that the defendant did not intend to return the money.
b. Indictment 15-031-03. The third indictment alleged further instances where the defendant embezzled funds from DAV 96. The defendant asserts that the Commonwealth was obligated to provide affirmative evidence that each and every transaction was unauthorized. We disagree. The evidence that the defendant had taken funds in excess of $250 during the stated time period was sufficient for several reasons.
First, DAV 96 was suspended by the DAV effective October of 2010. All transactions after that point were unauthorized. In September of 2010, Daniel Stack, chief executive officer of the national department of the DAV, informed the defendant that DAV 96 could not expend funds while on suspension.[5] After DAV 96 was placed on suspension, the defendant used the DAV 96 debit card for numerous cash withdrawals and retail and restaurant purchases. The evidence presented would permit a rational jury to conclude that the defendant took money from DAV 96 after October 1, 2010, for his own use and enjoyment, without the knowledge or consent of DAV 96, and with the intent to permanently deprive the organization of the use of it.
Second, a rational trier of fact could infer that the defendant intended to permanently deprive DAV 96 of its property when he drew a check in the amount of $15,000 from DAV 96 account 2918, made payable to "Wilson and Associates," and then, twenty-four days later, when the majority of the funds were refunded to the defendant, he did not deposit the funds back into the DAV 96 account.[6]
Third, the defendant did not comply with the organization's financial controls and authorization procedures.[7] All checks required the signature of the commander and the treasurer, but when the treasurer was unable to attend the majority of the meetings, the defendant told him that his duties would be covered. Furthermore, he made liberal use of a bank debit card linked to DAV 96 account 2918, a checking account at the Cooperative Bank of Cape Cod. Although the debit card obviated the signature requirement, the organization still required that payments be authorized by a vote of the membership. The defendant used the DAV 96 debit card in his name to withdraw money from DAV 96 account 2918 and deposit that money in his personal account. He also used the DAV 96 debit card for scores of purchases at retail establishments (e.g., Toys R Us, Wal-Mart, Bath and Body Works) and restaurants (e.g., IHOP, McDonalds, KFC), totaling in the thousands of dollars.
With respect to all the transactions, but especially the latter group, the defendant maintains that there is insufficient evidence that the defendant was not authorized to make any transactions. Although there was testimony from the former treasurer of DAV 96 that the defendant was allotted some discretion in spending,[8] Stack testified that, under the DAV bylaws, "no one individual within a chapter could ... automatically just disperse funds," and that the defendant was not allowed any discretion to "expend money without a vote." Wolfgang Fattler, a member of the DAV 96, testified that DAV 96 never voted to approve the $15,000 Wilson and Associates check. While he did not testify to every single one of the scores of expenditures that were put in evidence, the import of his testimony permitted the jury to conclude that the defendant had not sought the authorization of the membership, and indeed had kept the membership in the dark. It was for the jury to decide which testimony to credit. See Commonwealth v. Martin, 467 Mass. 291, 314 (2014) ("credibility and weight of evidence are for jury").
Finally, there was evidence that tended to show that the defendant was hiding these transactions, evidence from which the jury could infer consciousness of guilt. The defendant was required to submit annual financial reports for DAV 96 to the DAV. These reports were reviewed to "ascertain if all of the monies being donated to the ... [DAV] [were] being wisely utilized." The defendant last filed a financial report in 2006. The DAV 96 was placed on suspension from the DAV in October of 2010 for failure to file the annual reports. Stack offered to help, and the defendant broke several appointments with Stack. The jury were permitted to infer that the defendant failed to comply with yearly filings because he was disbursing DAV 96 funds without authority. See Commonwealth v. Toney, 385 Mass. 575, 584 (1982) (inference of consciousness of guilt "may be drawn from evidence of ... concealment").
2. Spreadsheet. The defendant contends that the judge abused his discretion in admitting a financial spreadsheet that summarized the defendant's use of the DAV 96 debit card. "Summary charts of voluminous evidence are permissible if they are accurate and fair, although care must be taken to insure that summaries accurately reflect the contents of the underlying documents and do not function as pedagogical devices that unfairly emphasize part of the proponent's proof." Commonwealth v. Mimless, 53 Mass. App. Ct. 534, 538 (2002) (quotations omitted).
The Commonwealth's financial investigator, Stephen Bethoney, reviewed the spreadsheet, which accurately summarized hundreds of pages of records, including "hundreds" of debit card transactions.[9] The spreadsheet was not cumulative of Bethoney's lengthy and thorough testimony, but was a concise, clarifying, representation of the voluminous transactions involving DAV 96 account 2918.[10] See Commonwealth v. Greenberg, 339 Mass. 557, 582 (1959) ("[C]oncise statements to their content verified by persons who had prepared them from the originals were the only means for presenting to the jury an intelligible view of the issues involved"); Commonwealth v. Carnes, 457 Mass. 812, 825 (2010) (spreadsheet is admissible "provided that the underlying records have been admitted in evidence and that the summaries accurately reflect the records"); Commonwealth v. Walter, 10 Mass. App. Ct. 255, 264 (1980) ; Mass. G. Evid. § 1006 (2017) ("The proponent may use a summary, chart, or the like to prove the content of voluminous writings or records that cannot be conveniently examined in court"). "[The spreadsheet] was admissible, in the discretion of the judge, as a matter of convenience." Commonwealth v. Wood, 90 Mass. App. Ct. 271, 276 (2016), quoting from Dyecraftsmen, Inc. v. Feinberg, 359 Mass. 485, 487 (1971). See Commonwealth v. Baker, 368 Mass. 58, 84-85 (1975).[11]
The defendant also maintains that the judge abused his discretion by failing to "caution the jury to evaluate the evidence independently." The defendant did not request such an instruction at trial and the judge was not required to give a limiting instruction sua sponte. See Commonwealth v. Sullivan, 436 Mass. 799, 809 (2002). Moreover, the judge instructed the jury that they "decide the facts in this case solely from the evidence and nothing but the evidence presented inside of this courtroom," and that each of the three indictments "are entitled to your full, fair and separate and individual consideration."
3. Venue. The defendant maintains that pretrial and trial publicity deprived him of a fair trial. The defendant did not object to the empanelment of any of the questioned jurors, nor did he request a change of venue or a mistrial. We review to determine whether the judge abused his discretion by not ordering a change of venue sua sponte. Commonwealth v. Clark, 432 Mass. 1, 5-6 (2000).
"A judge may, on his or her own motion or on motion of a party, order a change of venue where there exists in the community where the prosecution is pending so great a prejudice against the defendant that he may not there obtain a fair and impartial trial." Ibid. (quotation omitted). A change of venue should be ordered in the judge's discretion "only after a solid foundation of fact has been first established." Commonwealth v. McCowen, 458 Mass. 461, 476 (2010) (quotation omitted). A defendant's right to a fair and impartial jury does not require that jury members have no prior knowledge of the crime, Commonwealth v. Morales, 440 Mass. 536, 542 (2003), and the existence of pretrial publicity alone, even "[s]ubstantial publicity," may not necessitate a change of venue. Commonwealth v. Simpson, 434 Mass. 570, 576 (2001).
Here, the defendant cites incidents of media coverage which he claims may have had an impact on the jury. To the extent we can review this claim, none of these instances appear to represent anything but routine media coverage of a trial of local interest.[12] When empanelling the jury, the judge conducted an individual voir dire of jurors who stated that they had previous knowledge of the case. Although three jurors indicated that they had seen an article in a local newspaper, the judge found them impartial. See Morales, supra; Commonwealth v. Leahy, 445 Mass. 481, 495 (2005). The finding was fully supported by the record and the defendant made no objection at trial. Other articles were published during the trial, but the judge instructed the jurors daily to avoid any press coverage related to the trial. The jury are presumed to follow a judge's instructions. Commonwealth v. Williams, 450 Mass. 645, 651 (2008). Defense counsel indicated that he was satisfied with the judge's instruction to the jury to avoid any media coverage of the case. See Morales, supra at 543. The judge did not abuse his discretion.
4. Restitution. The defendant contends that the restitution order in the amount of $92,931.10 was improper and that the judge abused his discretion by failing to consider the defendant's ability to pay the restitution.
We review a judge's restitution order for abuse of discretion or error of law. Commonwealth v. McIntyre, 436 Mass. 829, 836 (2002). A judge ordering restitution must first "determine the amount of the victim's actual economic loss causally connected to the defendant's crime." Commonwealth v. Henry, 475 Mass. at 121. "Restitution may be ordered only for those economic losses adequately documented by the victim and established by the Commonwealth" and "[t]here must be a sound basis in the evidence for the calculation." Commonwealth v. Buckley, 90 Mass. App. Ct. 177, 184 (2016) (quotation omitted).
The judge held an evidentiary hearing, and excluded questionable expenses. There was a "sound basis in the evidence" for the judge's finding. Ibid.
However, this case was decided before the Supreme Judicial Court's decision in Henry, 475 Mass. 117, which held that the judge must consider the defendant's ability to pay restitution when determining whether to order the defendant to pay restitution. Id. at 127. The Commonwealth concedes, and we agree, that the restitution order must be remanded for the judge's consideration in accordance with Henry.
Conclusion. The judgments are affirmed. The restitution order is vacated and that matter is remanded for further proceedings consistent with this memorandum and order.
So ordered.
Affirmed in part; vacated in part and remanded.

The Disabled American Veterans (DAV) is a federally chartered nonprofit veterans organization. DAV 96 is a local chapter which engages in a variety of advocacy and volunteering on behalf of local veterans on Cape Cod.

The defendant was not entitled to compensation for his role as commander of DAV 96. According to the bylaws, "By accepting an elected or appointed office, each member agrees that his service shall be rendered gratuitously; and that he shall not be entitled to reimbursement for any sums advanced, incurred or spent unless expressly authorized by the chapter at a regular chapter meeting."

There was evidence that some of the membership of DAV 96 were aware that a corporation named Disabled Veterans Association of Cape Cod and the Islands had been formed to collect money for a building fund.

Stack testified that when "a chapter is not providing you with the information that is required, the department commander can go ahead and place a chapter in suspension." "[T]he chapter that's in suspension cannot conduct any business whatsoever" "or ... spend any funds whatsoever of the chapter."

Wolfgang Fattler, a DAV 96 member, testified that he did not recall voting to issue a check for $15,000 to Wilson and Associates.

Stack testified that a motion must be made when any chapter wanted to pay a bill or expend funds to indigent veterans. When that motion was approved the check would have to be signed by the commander and the treasurer.

On redirect examination the Commonwealth elicited testimony from the treasurer that the defendant's discretion was limited to emergency situations.

Bethoney testified that he would be able to "walk through the account statements" for DAV 96 account 2918 and identify each transaction, but that it would take "a very long time."

The spreadsheets contained the dates, amounts, and types of each transaction associated with the DAV 96 account.

The defendant also contends that the spreadsheet implied that the listed transactions were unauthorized. The spreadsheet simply listed the transactions, and the Commonwealth's witness did not express any opinion on the subject of authorization.

None of the articles or broadcasts are in the record.