COMMONWEALTH *vs.* AVRAM A., a juvenile.

No. 11-P-1489.

Franklin-Hampshire. November 1, 2012. - January 30, 2013.

Present: MEADE, SIKORA, & HANLON, JJ.

*Restitution. Damages,* Restitution. *Juvenile Court,* Delinquent child, Probation. *Practice, Criminal,* Juvenile delinquency proceeding, Restitution, Probation.

A Juvenile Court judge did not abuse his discretion by ordering the twelve year old juvenile to pay restitution for the damage he did to the victims' property, where the judge had the authority to order the juvenile to pay restitution; where the judge held a hearing on the question of the proper amount of restitution, at which the juvenile had the opportunity to challenge the Commonwealth's evidence and present evidence relevant to his ability to pay; and where the Commonwealth satisfied its burden of proving the dollar amount of the damage caused by the juvenile; further, the judge's order was not contrary to the purpose of the juvenile justice system, and the availability of a civil cause of action against the juvenile's parents did not detract from the judge's authority to order restitution. [210-214]

There was no merit to a juvenile's claim that a Juvenile Court judge abused his discretion by extending the period of the juvenile's probation. [214]

A Juvenile Court judge did not abuse his discretion, in calculating the amount of restitution the juvenile must pay for damage he did to the victims' property, by relying on the estimated cost to repair one victim's property in order to determine the cost to repair another victim's property; further, the judge did not abuse his discretion in calculating the restitution amount for a third property. [214-215]

COMPLAINT received and sworn to in the Franklin and Hampshire Counties Division of the Juvenile Court Department on August 20, 2010.

A proceeding for revocation of probation, filed on October 20, 2011, was heard by *James G. Collins,* J.

*Craig R. Bartolomei* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

MEADE, J. After admitting to facts sufficient to warrant a find-

ing of delinquency for "tagging" property in violation of G. L. c. 266, § 126B, the juvenile's case was continued without a finding for one year with agreed-to conditions which included the payment of restitution. On appeal, the juvenile claims the restitution order constituted an abuse of the judge's discretion because the juvenile was unable to pay due to his age, the order was contrary to the purpose of the juvenile justice system, it was improperly extended, and it was not supported with adequate documentation and evidence. We affirm.

1. *Background.* After conducting a restitution hearing, the judge found the following facts. Armed with a can of spray paint, the juvenile "tagged" several properties in Easthampton. At Richard Dudkiewicz's home, letters were spray painted on some newly installed vinyl siding on the garage. The paint could not be removed from the siding. The professional estimate to replace the siding was $276.45. Dudkiewicz performed the repair himself. The siding material cost him $160, and the job took two days to complete. Utilizing the minimum wage rate of eight dollars per hour, multiplied by fifteen hours, the judge calculated the labor cost to be worth $120; the professional labor estimate was $110.

At Eric Sergal's home, the juvenile spray painted some symbols and numerals on the concrete foundation. Sergal received a $500 estimate to remove the paint. The judge found that the damage to Sergal's property was very similar in size and location to that done to the home of his neighbor, Robert Blanchette.[1] Blanchette, who was elderly and in poor health, did not obtain an estimate for the paint removal from his property. At the conclusion of the hearing, the judge ordered the juvenile to pay $1,313.78 in restitution.[2]

A year after his admission to sufficient facts and his agreement to pay restitution, the juvenile had paid nothing towards the amount owed. As a result, he was brought before the court for violating his probation. The juvenile, who was twelve years

---

[1] The judge was provided photographic exhibits of the damage done to both properties.

[2] The juvenile also stipulated to the amount of damages incurred by two other victims. Those amounts were $29.27 for the Easthampton Housing Authority, and $8.06 for Tim McCarthy.

old at the time of the probation violation hearing, maintained he was unable to pay due to his age. The juvenile has no medical or mental health condition that impairs his ability to earn money. He had a savings account with approximately twenty dollars in it, but had not paid any of that money to the victims. He offered no other evidence regarding his inability to pay. The judge found the juvenile in violation and extended his probation until his sixteenth birthday to enable him to satisfy the restitution order. The judge reduced the restitution amount by $250, which had been paid by a codefendant, to $1,063.78, and waived any other probation costs so the juvenile could "concentrate his energies" on paying the victims whom he had harmed. The appellate record indicates the juvenile has paid nothing to satisfy the ordered restitution.

2. *Discussion.* a. *The restitution order.* Unlike our adult criminal justice scheme, the underlying philosophy of our juvenile justice system is that it is not punitive. See *Police Commr. of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 666-667 (1978). "Rather, it is primarily rehabilitative, cognizant of the inherent differences between juvenile and adult offenders, and geared toward 'the correction and redemption to society of delinquent children.' " *Commonwealth* v. *Magnus M.*, 461 Mass. 459, 461 (2012), quoting from *Metcalf* v. *Commonwealth*, 338 Mass. 648, 651 (1959). When we interpret provisions within the juvenile justice system, we view them not through a criminal lens, but instead we construe those provisions liberally — but practically — so that children are seen not as criminals, but as "children in need of aid, encouragement and guidance." G. L. c. 119, § 53. See *Commonwealth* v. *Magnus M., supra*.

The juvenile claims the judge abused his discretion by ordering him, as a twelve year old boy, to pay restitution for the damage he did to the victims' property. We disagree. To constitute an abuse of discretion, the juvenile must show that "no conscientious judge, acting intelligently, could honestly have taken the view expressed by him." *Commonwealth* v. *Medeiros*, 395 Mass. 336, 351 (1985), quoting from *Commonwealth* v. *Bys*, 370 Mass. 350, 361 (1976). We undertake this inquiry against the backdrop of the underlying purpose and philosophy of the juvenile justice system described above.

As a starting point, we first determine whether the judge had the authority to order the juvenile to pay restitution. He did. "As a condition of probation, a Juvenile Court [judge] may order a child to pay restitution to a person who has been injured by, or sustained property damage as a result of, the delinquent act." Ireland, Juvenile Law § 1.78 (2d ed. 2006) (Juvenile Law). Indeed, the Legislature enacted G. L. c. 119, § 62, which expressly confers such authority on Juvenile Court judges. Section 62 states:

> "If, in adjudging a person a delinquent child, the court finds, as an element of such delinquency, that he has committed an act involving liability in a civil action, and such delinquent child is placed on probation, the court may require, as a condition thereof, that he shall make restitution or reparation to the injured person to such an extent and in such sum as the court determines. If the payment is not made at once, it shall be made to the probation officer, who shall give a receipt therefor, keep a record of the payment, pay the money to said injured person, and keep on file his receipt therefor."

G. L. c. 119, § 62, inserted by St. 1906, c. 413, § 12.[3]

When a judge exercises his or her discretion to order restitution following a delinquency determination by an admission to sufficient facts or by verdict, the child is entitled to a hearing on the question of the proper amount of restitution. See *Commonwealth* v. *Nawn*, 394 Mass. 1, 7-8 (1985); Juvenile Law, *supra* at § 1.78. The judge held such a hearing in this case. At the hearing, it was the Commonwealth's burden to prove the amount of the victims' losses by a preponderance of the evidence. *Commonwealth* v. *McIntyre*, 436 Mass. 829, 834 (2002). The juvenile, in turn, had the opportunity to challenge that evidence as well as present evidence relevant to his ability to pay. *Commonwealth* v. *Morris M.*, 70 Mass. App. Ct. 688, 698 (2007).

To satisfy its burden to prove the dollar amount of the damage caused by the juvenile, the Commonwealth offered the

---

[3]A separate statute authorizes a Juvenile Court judge to order restitution where a child has been found delinquent by reason of having violated a motor vehicle statute, bylaw or regulation. See G. L. c. 119, § 58B.

testimony of two witnesses and four exhibits. Although given the opportunity, as the judge found, the juvenile did not offer any evidence on his ability to pay. See *Commonwealth* v. *Morris M.*, *supra* (juvenile offered no evidence on his ability to pay). Instead, the juvenile argued that he cannot work because he is only twelve, which he claims was "all he needed to show" given the limited financial prospects for a child his age. On appeal, he supports this claim by reference to the Commonwealth's Web site, which notes that, with limited exceptions, children under the age of fourteen cannot work. But neither argument nor citation to a Web site are substitutes for evidence.

What lies at the heart of the juvenile's claim is his belief that the judge's order requiring the juvenile to pay restitution for the damage he did was contrary to the purpose of the juvenile justice system. More specifically, the juvenile claims the restitution order was punitive, and the judge's stated desire for the victims to be made whole ignored the fact that in our system of juvenile justice, the juvenile's welfare trumps that of the victims he has harmed. We disagree.

As an initial matter, as stated above, the legislative enactment of G. L. c. 119, § 62, which does not exempt juveniles under the age of fourteen from orders of restitution, contradicts the juvenile's argument. We further note that the payment of restitution was an agreed-to condition that enabled the juvenile to receive the benefit of a continuance without a finding. As the judge stated in his order extending the juvenile's probation, the juvenile has received that benefit "without making even the barest gesture towards paying the restitution ordered" and he appears to have been "simply running out the clock as the end of probation neared."

However, most importantly, the judge's order was not contrary to the purpose of the juvenile justice system. The Legislature has mandated that the juvenile justice provision of G. L. c. 119, §§ 52-63, must be liberally construed "so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance." G. L. c. 119, § 53. In fact, this was the

judge's stated purpose when he extended the juvenile's probation. The judge sought to instill a "very important moral lesson" through the restitution order, and stated:

> "The purpose of the Juvenile Court in the main is to be able to help people, young people, become principled, ethical law abiding citizens of our society, and I think it is a very important moral lesson for [all] of us to know that if we ever hurt anybody in life we have got to make them whole again."

Indeed, it was not unreasonable, let alone an abuse of discretion, for the judge to view this matter as a parent would who was seeking to aid and guide his or her child. When he extended the period of probation, the judge properly sought to teach the juvenile one of life's primary lessons: he is responsible for the actions he takes. Such an order not only provided an opportunity to build the juvenile's character and integrity, but also to promote his life as a law-abiding citizen. The judge's order had the added benefit of instilling in the juvenile the important values of respect for others (as well as their property) and a basic understanding of the value of work and money.

Like the judge, we also reject the juvenile's suggestion that he should be excused from paying restitution because it is contrary to contemporary mores or even "taboo" to permit a juvenile of twelve to sixteen years to earn money by obtaining a paper route, mowing lawns, raking leaves, shoveling snow, baby-sitting, delivering groceries, or by recycling items upon which a deposit had been paid. As the judge properly noted, there exists statutory permission for children as young as nine years of age to participate in the delivery and sales of newspapers, G. L. c. 149, § 69, and there is no statutory prohibition against the other remunerative pursuits ordinarily associated with childhood listed above.

Finally, the juvenile claims the judge's restitution order ignores G. L. c. 231, § 85G, which provides a civil cause of action against parents for victims of intentional acts done by the parents' child.[4] However, the availability of this remedy in no

---

[4] Section 85G states, in pertinent part, "Parents of an unemancipated child under the age of eighteen and over the age of seven years shall be liable in a

way detracts from the judge's authority under G. L. c. 119, § 62. See Juvenile Law, *supra* at § 1.78 ("this principle of civil damages should not limit the assessment of restitution"). Cf. *Commonwealth* v. *Williams,* 57 Mass. App. Ct. 917, 918 (2003) (judge not required to consider the availability of insurance proceeds in determining the restitution order). The judge was not required to have the victims pursue a civil remedy as a condition of restitution or in lieu of restitution.

b. *Extending probation.* There is similarly no merit to the juvenile's claim that the judge abused his discretion by extending the period of probation. Given that the juvenile had paid nothing towards the ordered restitution, it was not an abuse of discretion to provide the juvenile more time to make good on his end of the bargain he received. Indeed, as the juvenile gets older, his opportunities for employment only increase.[5] See Juvenile Law, *supra* at § 1.78. We cannot conclude that the extension of the probation period in any way constituted an abuse of discretion. See *Commonwealth* v. *Medeiros,* 395 Mass. at 351.

c. *Calculating the damages.* The juvenile also claims that the judge improperly calculated the restitution amount by relying on the estimated cost to repair the damage to Sergal's property in order to determine the cost to repair Blanchette's property. Even assuming this claim was properly preserved, we disagree.

Ordering restitution and determining the amount thereof rest within the sound discretion of the judge. *Commonwealth* v. *Nawn,* 394 Mass. at 8. Restitution is limited to adequately supported or documented economic losses caused by the juvenile's conduct, and the procedure for establishing an order of restitution must be fair and reasonable. See *Commonwealth* v. *Rotonda,* 434 Mass. 211, 221 (2001); *Commonwealth* v. *McIntyre,* 436 Mass. at 834. The process for the admission and consideration of evidence must be flexible, and the strict rules of evidence do

civil action for any willful act committed by said child which results in injury or death to another person or damage to the property of another . . . ."

[5]The juvenile's reliance of *Commonwealth* v. *Rescia,* 44 Mass. App. Ct. 909 (1998), for the proposition that a seventeen year old may not be able to pay restitution, is misplaced. This court remanded that case not simply because the young defendant could not pay, but because the payment terms and schedule of the order were not included in the record on appeal. *Id.* at 910-911.

not apply. See *Commonwealth* v. *Casanova*, 65 Mass. App. Ct. 750, 755-756 (2006); *Commonwealth* v. *Amaral*, 78 Mass. App. Ct. 557, 561 (2011).

Blanchette, an octogenarian in ill health, did not obtain his own estimate to repair the damage done to his home. Based on his review of photographic exhibits, the judge found that the damage done to Sergal's property was similar in size and location to the damage done to Blanchette's home. Given that prior to the hearing on restitution, the juvenile's counsel remarked that Blanchette's home sustained more damage than Sergal's house, and the lack of a requirement that the victim himself must document his loss, see *Commonwealth* v. *Yeshulas*, 51 Mass. App. Ct. 486, 492-493 (2001), we cannot say the judge abused his discretion in relying on an estimate for the similar type of damage.

The juvenile also claims that the judge abused his discretion in calculating the restitution amount for the Dudkiewicz property. We disagree. Dudkiewicz received a repair estimate that totaled $276.45. Because Dudkiewicz could not afford to pay for the work to be done, he did it himself, which took him two days. Although the judge calculated the cost of labor based on a work day of 7.5 hours at the minimum wage amount, i.e., eight dollars per hour, for $120, he used the lesser labor figure of $110 that had been provided in the professional estimate. The juvenile's claim that Dudkiewicz's restitution amount was not properly supported with documentation is without merit where the professional estimate was admitted and where Dudkiewicz testified at the restitution hearing.[6] There was no abuse of discretion.

*Order extending probation affirmed.*

---

[6]The juvenile's claim that Dudkiewicz was required to submit an accounting of his time, and whether he missed work or was on vacation during the two days he did the repairs, does not require discussion.