NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11957

COMMONWEALTH  vs.  DAISY OBI.


Middlesex.      January 8, 2016. - September 21, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.[1]


Constitutional Law, Sentence.  Practice, Criminal, Sentence, Probation, Challenge to jurors, Jury and jurors, Conduct of judge, Disqualification of judge.  Jury and Jurors.  Judge.



Complaint received and sworn to in the Somerville Division of the District Court Department on August 28, 2012.

The case was tried before Paul M. Yee, Jr., J., and a motion for resentencing was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Kimberly M. Peterson for the defendant.
Mary F.P. O'Neill, Assistant District Attorney, for the Commonwealth.


_____

[1] Justices Spina, Cordy, and Duffly participated in the deliberation on this case prior to their retirements.

LENK, J.  The defendant, a landlord, was convicted of assault and battery after pushing a tenant who is Muslim down a flight of stairs.  The defendant was sentenced to a term of incarceration of two years in a house of correction, six months to serve, with the balance suspended for a period of two years. The judge imposed two special conditions of probation during the period of suspension:  that the defendant provide a written disclosure to prospective tenants that she had been convicted of assaulting a tenant and had had several harassment prevention orders issued against her; and that the defendant attend an introductory class on Islam.  A single justice of the Appeals Court stayed execution of the defendant's sentence pending this appeal.

The defendant contends that imposition of this length of a period of incarceration, and the special conditions of probation, would violate her constitutional rights under both the Federal and State Constitutions.  She also asserts error in a number of the judge's rulings at trial.  We conclude that the judge did not abuse his discretion in imposing the sentence of incarceration or in requiring the defendant to provide written disclosure to prospective tenants as a condition of probation. We do not address the defendant's constitutional objections to being required to attend the class on Islam as a condition of probation, which were not raised in the trial court.  We further

conclude that the judge's other contested rulings were not error.  Accordingly, we affirm.

1.  Trial proceedings.  We recite the facts the jury could have found, reserving certain details for later discussion.  The defendant, a septuagenarian Christian minister, owns a three-family apartment building in Somerville, where she lives on the second floor.  At the time of trial, the defendant had been a landlord for almost twenty years.  Gilhan Suliman, a Muslim woman, leased the third-floor apartment from the defendant on a short-term basis from April 1, 2012, through August 31, 2012; she lived there with her husband and five children.

The relationship between the defendant and Suliman soured over the course of Suliman's short tenancy.  Suliman contacted the defendant multiple times to complain that there was no electricity or heat in her apartment.  The defendant, for her part, complained that Suliman and her family were too noisy, and that more people were living in Suliman's apartment than were permitted under the terms of her lease, an allegation that Suliman denied.  At one point, the defendant attempted to raise Suliman's rent to compensate for Suliman's purportedly excessive water usage.  In addition, the defendant served Suliman with a

notice to quit, asserting that the additional occupants violated the terms of Suliman's lease.[2]

The animosity between the defendant and Suliman, however, went beyond typical landlord-tenant issues. According to Suliman, the defendant also made disparaging remarks to Suliman about her religious beliefs. One night in May, 2012, the defendant stood on the stairs outside of Suliman's apartment, screaming about "how Muslims are, they should be burned in hell, and how [the] prophet should be burned in hell." On another occasion, in June, 2012, after accusing Suliman's children of throwing trash in the street, the defendant shouted that they were "wicked kids" and "evil." She added, "[B]ecause they are Muslims . . . they will be delivered in hell." Suliman reported the latter incident to police.

The confrontation that resulted in the defendant's conviction in this case occurred on August 28, 2012, three days before Suliman's lease was to terminate. That morning, as Suliman was walking up the stairs to the second floor of the apartment building on the way up to her third-floor apartment, the defendant accosted her. The defendant was upset because she

---

[2] The record indicates that Suliman had obtained a harassment prevention order against the defendant before August 28, 2012. The record is silent, however, about the basis for that order. The order was not admitted in evidence, but was considered by the judge during sentencing.

believed that Suliman had been ringing her doorbell.  According to Suliman, however, construction workers, not she, had rung the bell, in connection with work that they were doing in the neighborhood.  The defendant shouted, "Get out of my house," and pushed Suliman, who fell down approximately fifteen to twenty stairs, hitting her face on a railing.  As a result of the fall, Suliman cut her lip and tore a ligament in her shoulder.  Suliman immediately telephoned the police.  When a police officer arrived at the scene, Suliman's lip was bleeding and she appeared to be in pain.[3]  Both Suliman and her children were crying.  The officer placed the defendant under arrest in connection with the incident.

2.  Procedural posture.  The defendant was charged with one count of violating an abuse prevention order, in violation of G. L. c. 209A, § 7, and one count of assault and battery, in violation of G. L. c. 265, § 13A (a).  After a series of pretrial hearings and a period of pretrial probation, a one-day jury trial was conducted in the District Court on April 23, 2014, on the charge of assault and battery.  The Commonwealth

_____

[3] Suliman did not testify that she received medical treatment for her injuries.  During the sentencing proceeding, however, Suliman stated that, since the August 28, 2012 incident, she has taken prescription medication for shoulder pain and has participated in physical therapy.

filed a nolle prosequi with respect to the charged violation of an abuse prevention order.[4]

The defendant's theory of the case was that Suliman was "the tenant from Hell."  During her testimony, the defendant denied that she had pushed Suliman down the stairs, and maintained that she was in her apartment praying when police knocked on her door and arrested her.  The defendant argued that Suliman had maneuvered to have her arrested in order to stave off being evicted for having too many people living in her apartment.  In support of this view, the defendant emphasized that Suliman repeatedly had called the police to complain about the defendant, and that Suliman had filed a complaint with the Massachusetts Commission Against Discrimination alleging that the defendant had sought to evict her because of her religion.  The defendant denied ever shouting at Suliman or her children, and denied that there were any issues with the hot water or electricity in Suliman's apartment.

The jury found the defendant guilty of assault and battery.  The judge requested a mental health evaluation in aid of sentencing, and ultimately sentenced the defendant on

---

[4] As filed, the complaint incorrectly charged that the defendant had violated an abuse prevention order, not a harassment prevention order.  See note 2, supra.  The judge denied the Commonwealth's motion to amend the complaint to correct the error, on the ground that the motion was first made on the day of trial.

June 2, 2014. On June 3, 2014, the defendant sought postconviction relief, filing a notice of appeal and a motion to be resentenced by a different judge. After a hearing on June 10, 2014, the trial judge denied the motion for resentencing. On July 17, 2014, a single justice of the Appeals Court allowed the defendant's motion for a stay of execution of sentence, and directed the District Court to enter an order releasing her from custody and relieving her from compliance with the conditions of probation pending her appeal. We transferred the case to this court on our own motion.

3. Discussion. The defendant argues that the trial judge imposed an unconstitutional term of incarceration and unconstitutional conditions of probation. She contends also that it was error for the judge to deny a peremptory challenge that defense counsel made during empanelment and that it was error for the judge not to recuse himself from her case.

a. Sentencing. The judge heard additional information in aid of sentencing that was not presented to the jury. A mental health evaluation indicated that the defendant did not have a history of mental illness or aggressiveness requiring treatment or medication. The judge also learned, however, that several other tenants had obtained harassment prevention orders against the defendant, some of which were still in effect at the time of

sentencing.[5]  Furthermore, Suliman stated that "[t]he emotional and health impact of what [the defendant] had done to [her] family will be felt for years to come."

As noted, the judge sentenced the defendant to a term of incarceration of two years in a house of correction, six months to serve, with the balance suspended.  The conditions of probation included the following.  The defendant was required to provide "a written disclosure to every tenant that [the defendant] rents property to," stating that the defendant "has been convicted of assaulting a tenant in the past, and has had several harassment prevention orders issued against her by the Court in the past."  In addition, the defendant was required to enroll in and attend an introductory class on Islam, and to provide her probation officer with written documentation that she had done so.  Moreover, the defendant was required to comply with all Federal and State laws, including antidiscrimination and housing laws.  During the sentencing hearing, the judge told the defendant, "You have to respect the rights of people of the Muslim faith.  You have to respect all people.  All right.  That's the message I'm sending out to you.  That is the message that I'm sending out to the community.  All right.  Even you,

---

[5] The basis for these harassment orders is not in the record.

wanting to be a person of God, have to [show] respect for all people."

1. Term of incarceration. The defendant argues that the term of her incarceration is so disproportionate to her offense that it violates the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights. In the defendant's view, the sentence of two years in a house of correction with six months to serve is disproportionately harsh, because she was a seventy-one year old woman with no criminal record at the time of her conviction, and because Suliman suffered relatively minor injuries as a result of the assault and battery.[6] "A judge has considerable latitude within the framework of the applicable statute to determine the appropriate individualized sentence." Commonwealth v. Goodwin, 414 Mass. 88, 92 (1993). Although some sentences may "be so disproportionate to the offense as to constitute cruel [or] unusual punishment," Commonwealth v. Sanchez, 405 Mass. 369, 379 (1989), quoting Cepulonis v. Commonwealth, 384 Mass. 495, 496 & n.2 (1981), and cases cited, a sentenced defendant must meet the "heavy burden" of showing that the sentence "shocks the conscience and offends fundamental notions of human dignity"

---

[6] The judge told the defendant during the sentencing hearing that some portion of her punishment "has to be incarceration. So that you can reflect on what you have done and what you will be doing in the future, that this shall never happen again."

(citations omitted).  Commonwealth v. Jackson, 369 Mass. 904, 910 (1976).

The defendant has not met the burden of showing that her sentence was disproportionate to the seriousness of the offense, and certainly not so disproportionate as to be cruel or unusual punishment.  During the sentencing hearing, Suliman explained that the defendant's assault and battery has had a "deep physical impact" on her, that she has been unable to sleep at night, and that she does not trust people in the same way she did before the incident.  She added that her children are now afraid of going outside, and that her six year old son had started wetting his bed.  Compare Commonwealth v. Sanchez, supra at 379-380 (imposition of two consecutive life sentences and two other concurrent life sentences for defendant was not disproportionate given extent of psychological harm, stigma, and lasting injuries suffered by victims).  The sentence was within the maximum permitted by statute.  See G. L. c. 265, § 13A (authorizing sentence of up to two and one-half years in house of correction for conviction of assault and battery).[7]  Cf. Commonwealth v. Tart, 408 Mass. 249, 267 (1990) (short sentence of incarceration was not disproportionate to offense of fishing

---

[7] The record indicates that the defendant could face adverse immigration consequences as a result of her conviction and sentence.  This issue was not, however, raised on appeal.

commercially without required permit).  Simply put, the defendant's sentence does not "shock[] the conscience and offend[] fundamental notions of human dignity" (citation omitted).  Commonwealth v. Jackson, supra at 910.

2.  Written disclosure as condition of probation.  The defendant argues that the condition of probation requiring her to disclose in writing to prospective tenants that she has been convicted of assaulting a tenant in the past, and has had harassment prevention orders issued against her, violates art. 1 of the Massachusetts Declaration of Rights.  A trial judge generally may impose a term of probation "for such time and upon such conditions as [the judge] deems proper."  G. L. c. 276, § 87.  "A probation condition is enforceable . . . so long as the condition is 'reasonably related' to the goals of sentencing and probation."  Commonwealth v. Lapointe, 435 Mass. 455, 459 (2001), citing Commonwealth v. Pike, 428 Mass. 393, 403 (1998).  "The principal goals of probation are rehabilitation of the defendant and protection of the public."  Commonwealth v. Lapointe, supra.  Other goals include "punishment, deterrence, and retribution" (citation omitted).  Id.  The goals "are best served if the conditions of probation are tailored to address the particular characteristics of the defendant and the crime" (citation omitted).  Id.

Although a judge "may place restrictions on probationers' freedoms that would be unconstitutional if applied to the general public," Commonwealth v. Pike, supra, such restrictions are not without limits, and merit "special scrutiny." United States v. Consuelo-Gonzalez, 521 F.2d 259, 265 (9th Cir. 1975). The more tenuous the relationship between a given condition and the goals of probation, and the more extensively a constitutional right is burdened, the less likely the condition is to be permissible. In Commonwealth v. Lapointe, supra at 457, 460, for example, we upheld a condition that prohibited a probationer convicted of indecent assault and battery on his daughter from living with most of his minor children, on the basis that the condition substantially advanced the public safety, rehabilitation, and deterrence goals of probation. Although we recognized that the condition might restrict his constitutional rights, including freedom of association, we concluded that it struck "an appropriate balance between the facts of [his] case and the goals of sentencing and probation." Id. at 461.[8] In Commonwealth v. Power, 420 Mass. 410, 412-413, 418 (1995), cert. denied, 516 U.S. 1042 (1996) (Power), we similarly upheld a condition that prohibited a probationer who

---

[8] Contrast Commonwealth v. Pike, 428 Mass. 393, 405 (1998) (determining that condition of probation banishing probationer from Massachusetts did not bear reasonable relationship to permissible goals of probation).

had been convicted of armed robbery of a bank, after spending twenty-three years as a fugitive, from profiting from the story of her crime. The condition was deemed permissible in the circumstances to deter the probationer and others similarly situated from seeking to profit from criminality. Id. at 418. Although we recognized that the condition "implicate[d]" the probationer's constitutional right to freedom of speech, we concluded that it did not burden that right unduly, because the probationer remained free to speak about her crime if she did not benefit financially from doing so. Id. at 415.

Had the probationer in Power, supra, been prohibited from speaking about her crime outright, however, we might well have reached a different result.[9] We previously have rejected a condition of probation that subjected probationers to a "blanket threat of warrantless searches," see Commonwealth v. LaFrance, 402 Mass. 789, 795 (1988), notwithstanding the fact that such a condition might aid in the probationers' rehabilitation and help to ensure their compliance with other conditions of probation. Id. at 792-793. The condition was determined to be simply too restrictive of the probationer's rights under art. 14 of

---

[9] See Commonwealth v. O'Brien, 86 Mass. App. Ct. 1124 (2014) (decision pursuant to Appeals Court rule 1:28 vacating condition of probation that prohibited probationer from making oral or written communications about victim to the probationer's family).

Massachusetts Declaration of Rights.  Id. at 795.  Accordingly,
we consider the extent to which the contested condition of
probation advances the goals of probation, and the extent to
which it burdens a constitutional right.

The defendant maintains that requiring the written
disclosure as a condition of probation violates her right under
art. 1 to "acquir[e], possess[] and protect[] property."  As we
noted in Power, supra at 418, however, some limitation on a
probationer's ability to make a profit is permissible where that
limitation substantially advances an enumerated probationary
goal.  The condition here substantially advances one such goal -
- public safety.  The record does not indicate what caused
tenants to seek harassment prevention orders against the
defendant, but the fact that several tenants have sought such
orders suggests that her behavior towards tenants is a recurring
problem.  Complying with the notice condition in this case
likely will affect the defendant's ability to earn the same
level of rental income from her property as she has been able to
previously.  To the extent that the condition is
constitutionally burdensome at all, however, it is not so
burdensome as to be invalid.[10]

---

[10] The defendant also argues, incorrectly, that the
condition violates the criminal offender record information
statute, G. L. c. 6, § 172 (d), which makes it "unlawful to

Although courts have split on whether conditions of probation seeking to shame the probationer by requiring him or her to provide public notice of a conviction are constitutionally permissible,[11] that is not squarely at issue here. The condition imposed on the defendant in this case is directed narrowly at ensuring that future tenants are aware of the risk they take by agreeing to rent one of the defendant's apartments.[12]

3. Class on Islam as condition of probation. The defendant additionally argues that requiring her to attend a class on Islam as a condition of probation is unduly restrictive of her rights under the establishment and free exercise clauses of the First Amendment to the United States Constitution, and the cognate provisions of the Massachusetts Declaration of

---

request or require a person to provide a copy of his criminal offender record information" in certain circumstances. "[C]riminal offender record information," however, is defined only to include "records and data . . . compiled by a Massachusetts criminal justice agency." See G. L. c. 6, § 167. That information is distinct from the disclosure required here.

[11] See Comment, The Ideology of Shame: An Analysis of First Amendment and Eighth Amendment Challenges to Scarlet-Letter Probation Conditions, 77 N.C. L. Rev. 783, 787-803 (1999) (cataloging inconsistent treatment of "shame" conditions considered by courts).

[12] The judge explained, "There has to be a written disclosure to every tenant that you rent property to. I cannot take away your rental property, but any tenants or prospective tenants that are renting need to know the type of person you are."

Rights. While conditions of probation that touch on religion and risk incursion upon constitutionally protected interests should be imposed only with great circumspection, the defendant raised no such concerns before the trial court judge, and there is no information in the record that would allow us to evaluate her claims. Because she raises these claims for the first time on appeal, they have been waived. See Commonwealth v. Cowels, 470 Mass. 607, 617 (2015).

4. "Respect" as condition of probation. The defendant contends further that the judge should not have required as a condition of her probation that she "respect the rights of people of the Muslim faith," because that requirement was impermissibly vague. While "[t]he constitutional rule against vague laws applies as equally to conditions of probation as it does to legislative enactments," Power, supra at 421, in context the judge's statement was clear. "Respect" for Muslims was not an independent condition of probation; the judge merely was explaining his reasoning for requiring that the defendant comply with all Federal and State laws, including antidiscrimination and housing laws. The requirement that the defendant obey local, State, and Federal laws and court orders is a standard, permissible condition of probation. See Commonwealth v. Maggio, 414 Mass. 193, 194 (1993) (condition of probation requiring

compliance with all existing laws is "essentially . . . imposed on all defendants who are placed on probation").

b.  Peremptory challenge.  During jury empanelment, defense counsel used a peremptory challenge to remove from the panel a prospective juror who was wearing a headscarf of the sort commonly worn by Muslim women.  Although the juror did not indicate her religious beliefs on her juror questionnaire, the Commonwealth requested that the judge confirm defense counsel had not exercised the peremptory challenge for a "religious purpose."  The judge then asked defense counsel why he had exercised the peremptory.  Defense counsel replied, "I don't have any particular reason, just a gut feeling that she wouldn't be sympathetic to my client, and I'm exercising my peremptory based on that, Your Honor, nothing to do with her religion, race, creed, or national origin."  The judge found that the response was not a "sufficient answer" to overcome the Commonwealth's objection, and sat the juror over the defendant's objection.  As a result of a randomized process,[13] the juror later served as foreperson of the jury.

The defendant argues that the judge's denial of her trial counsel's peremptory challenge deprived her of her right to a

_____

[13] The judge's practice was to select as foreperson of the jury the juror sitting closest to him.  In this case, the juror at issue was sitting closest to the judge after the only juror sitting closer was chosen randomly as an alternate.

fair and impartial jury.  She also contends, for the first time on appeal, that there was insufficient evidence in the record that the juror was Muslim, and that the judge should have conducted an individual voir dire regarding the juror's religion.  In addition, the defendant maintains that her trial counsel incorrectly was required to articulate a credible reason for his peremptory challenge.  These arguments are without merit.

Defendants have a right under the United States Constitution and the Massachusetts Declaration of Rights to be tried by an impartial jury.  Commonwealth v. Wood, 389 Mass. 552, 559 (1983).  "The right to use peremptory challenges, however, is not absolute."  Commonwealth v. Prunty, 462 Mass. 295, 305 (2012) (Prunty).  Although "[w]e presume that peremptory challenges are properly made," that presumption can be rebutted by a prima facie showing that there is "a pattern of challenges of members of the same discrete group" (citation omitted).  Id. at 306.  The presumption can also be rebutted by a prima facie showing that a challenge was made to "a single prospective juror within a protected class, . . . where there is a likelihood that [the prospective juror is] being excluded from the jury solely on the basis of . . . group membership" (citation and quotation omitted).  Id.  Discrete groups that are protected include groups defined by potential jurors' sex, race,

color, creed, or national origin.  See id. at 305 n.13, citing Commonwealth v. Soares, 377 Mass. 461, 488-489 & n.33, cert. denied 444 U.S. 881 (1979).  After a prima facie showing has been made, the burden shifts to the challenging party to provide "a neutral explanation establishing that the challenge is unrelated to the prospective juror's group affiliation." Prunty, supra at 306, quoting Commonwealth v. Harris, 409 Mass. 461, 464 (1991).  We review the denial of a peremptory challenge for abuse of discretion.  See Prunty, supra at 304.

Here, the Commonwealth objected to the defendant's exercise of a peremptory challenge on the basis that the prospective juror, like Suliman, was Muslim.  Although the defendant argues on appeal that there was insufficient evidence that the juror actually was Muslim, the judge observed that the juror's headscarf was of a type traditionally worn by Muslim women, and that no other prospective jurors appeared to be Muslim.  The Commonwealth further pointed out that Suliman, who identified herself as Muslim, wore a similar headscarf.  Accordingly, there was a prima facie showing that defense counsel exercised a peremptory challenge based on the prospective juror's religion. See Commonwealth v. Issa, 466 Mass. 1, 9 (2013) (considering percentage of group members excluded, and "whether the challenged jurors are members of the same constitutionally protected group as the defendant or the victim").  Given this,

the burden shifted to the defendant to provide a group-neutral explanation for the challenge.

We defer to the judge's determination that the defendant's burden was not met here.  In Prunty, supra at 307, 309-310 & n.21, we deferred to a judge's conclusion that a proffered reason for exercising a peremptory challenge of the only African-American in the venire was a "mere sham," noting that the judge "made clear findings as to both [the] adequacy and [the] genuineness" of that reason.  Here, although defense counsel stated that the challenge was not motivated by religious considerations, his only other explanation for the challenge was a "gut feeling" that the juror would not be sympathetic to the defendant.  Like the judge in Prunty, supra at 309-310, the judge in this case found clearly that that explanation was inadequate.  We discern no abuse of discretion in the judge's ruling.

c.  Recusal.  During the posttrial hearing on the defendant's motion for resentencing by a different judge, the defendant argued that the trial judge relied on improper considerations in his sentencing decision, including a dislike of her that was based on the judge's interactions with her at prior proceedings.  According to the record, the judge previously had presided at a hearing with respect to a harassment prevention order that Suliman had sought against the

defendant.  In addition, the judge had presided over a civil complaint that Suliman had filed against the defendant to recover her security deposit.

The judge rejected these arguments, noting that he was one of three judges who regularly sat in the District Court in Somerville, where the defendant's trial was held, and that "some familiarity" with defendants passing through that court house was to be expected.  He added, "In this particular case I didn't see anything, when I searched my own mind, that I could not be fair and impartial towards [the defendant] whether or not during the trial or whether or not during sentencing."  On appeal, the defendant argues for the first time that the trial judge should have recused himself for the entirety of the trial.  In the alternative, the defendant argues, as she did after sentencing, that her motion for resentencing by a different judge should have been allowed.

Posttrial recusal motions, however, "are presumptively untimely at least absent a showing of good cause for tardiness." Demoulas v. Demoulas Super Mkts., Inc., 428 Mass. 543, 547 (1998).  Although the defendant's trial counsel stated that he was unaware of the judge's involvement in prior proceedings against her, he was at least aware that those proceedings had occurred; the Commonwealth attempted unsuccessfully to introduce Suliman's harassment prevention order in evidence at the start

of trial.  In addition, defense counsel cross-examined Suliman regarding her civil complaint.  Accordingly, the defendant has not shown good cause for waiting to raise this claim until after her conviction.  See Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 464 (1991) ("The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming" [citation omitted]).

Judgment affirmed.