NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-975                                      Appeals Court


COMMONWEALTH  vs.  MARIA C. PEREIRA.


No. 16-P-975.

Plymouth.    December 4, 2017. - April 13, 2018.

Present:  Sacks, Ditkoff, & Singh, JJ.


Practice, Criminal, Revocation of probation, Restitution,
     Newspaper article.  Constitutional Law, Freedom of speech
     and press.  Newspaper.  Threatening.



     Indictments found and returned in the Superior Court
Department on April 18, 2014.

     A proceeding for revocation of probation was had before
Cornelius J. Moriarty, II, J.


     Robert A. O'Meara for the defendant.
     Carolyn A. Burbine, Assistant District Attorney, for the
Commonwealth.


     SACKS, J.  The defendant appeals from a Superior Court

order, entered after hearing, that revoked her probation.  The

judge found that the defendant had violated her probation

conditions by failing to make required weekly restitution

payments and violating a no-contact condition by contacting a

newspaper to make a threat against the victim, who then saw it published in an article in the newspaper. The judge sentenced her to from three and one-half to five years in State prison. We affirm.[1]

Background. On July 17, 2015, the defendant pleaded guilty to one count of larceny over $250, involving embezzlement from her brother's (victim) construction business in Brockton, where she had worked as a bookkeeper. The defendant had been indicted on sixteen charges; at the time of her guilty plea, the remaining fifteen charges were dismissed. The judge sentenced her to five years of probation, with conditions, among others, that she: (1) make restitution to the victim of $103,753.64, which the judge stated was "a substantial break off of what was . . . allegedly stolen," to be paid at the rate of $1000 per week; (2) stay away from the victim's residence and place of employment, and have no "direct or indirect contact" with him, his wife, or their children; and (3) execute a financial affidavit "stating that there are no available funds remaining from [her 2012] lottery winnings and no other funds or monies

---

[1] Based on the defendant's unrebutted representation that, while incarcerated, she had deposited her notice of appeal with prison authorities for mailing within the time to appeal, we conclude that her appeal is timely. See Commonwealth v. Hartsgrove, 407 Mass. 441, 446-447 (1990).

available."[2]  After having been given a weekend to consider this disposition, the defendant had represented to the judge that she was able to pay the $1000 weekly amount.  The defendant signed, thereby agreeing to obey, the order of probation conditions.

Four days later, on July 21, the defendant filed her financial affidavit, in which she stated that she had exhausted her $455,000 in lottery winnings.  In the affidavit the defendant failed, however, to account for $81,000 of those winnings, and did not assert any inability to pay the restitution as ordered and agreed.

On August 14, the defendant was issued a notice of surrender and hearing for alleged violations of probation (notice of probation violation) alleging that she had violated two probation conditions:  failure to make restitution payments and violation of the no-contact condition.

At an initial probation violation hearing on August 17, a probation officer represented that the defendant had made the first restitution payment, due July 24, but had missed the payments due July 31 and August 7, and made only a partial payment on August 15.  The probation officer further represented that the defendant had violated the no-contact condition by making comments about the victim in an article that appeared on

---

[2] In 2012, the defendant had won the Massachusetts lottery and received, after taxes, a check for $455,000.

July 28 in a local newspaper, the Enterprise.  Defense counsel then informed the judge that the defendant had lost her job. The judge (who had been the sentencing judge) expressed concern that the defendant, so soon after receiving a relatively lenient disposition of which the carefully-considered and agreed-upon restitution condition was a significant component, had apparently violated that condition.  He ordered the defendant held without bail pending a final probation violation hearing.

At that hearing, on September 11, the victim testified that after the defendant had pleaded guilty, the victim had made comments about her, including that she was a "scum bag," in an article about the case that appeared in the Enterprise on July 17.  The victim described the Enterprise as the "most widely published newspaper in the Brockton area."  On July 28, a second article appeared in the Enterprise, stating that the defendant had called the newspaper to say, among other things, that she "'covered up' things for [the victim] while she was a bookkeeper for his company" and that she had "enough evidence against him that will probably put both of us in jail."  The article further quoted her as saying:  "I am not guilty for anything. . . .  My attorneys gave me bad advice. . . .  My side of the story is I'm innocent and his day is coming.  Justice will be served against him."

The victim testified that he had read this article and had interpreted the defendant's comments as "threats that she had information that she was going to put [him] . . . in jail." The victim explained that seeing the article had affected him emotionally:

"I thought that the court case was closed and I had some relief from this whole situation. And apparently, it just continued. . . . I tried to close a chapter in my life with her bad doing. And it's just relentless, the stuff she is saying about me. . . . I felt that I gave my sister, my bookkeeper, the best possible leniency that I could have. And then to have it come out in the newspaper that she had information and that . . . she was given wrong counsel when she admitted that she did wrong, that to me was just -- closure wasn't set in and made me feel uptight."

The probation officer then represented to the judge that, before the defendant signed the probation conditions, he had reviewed them with her "starting from the first condition all the way to the final signature." He had also "specifically instructed [her], no contact with the victim, direct or indirect," and advised her that she "[could not] have a friend talk for her, have a letter written to another person and have that letter find its way back to the [victim]. It was very clear what third party [indirect] contact was." The probation officer had also represented, again, that the defendant had not made all required restitution payments.

At that point in the hearing, the judge stated that he was treating the probation officer's statements as evidence and

asked defense counsel if he wished to cross-examine the probation officer or offer any evidence for the defendant. Defense counsel declined both invitations.[3]  He limited his closing argument to asserting that the defendant had a constitutional right to make comments about the victim in the newspaper, in order to defend her reputation against his prior remarks about her in the same newspaper.

The judge rejected the defendant's free speech argument and found that she had violated the no-contact condition of her probation by "issuing [the victim] a threat."  With respect to restitution, the judge found:  "[S]he has not paid the money that she promised to pay.  And I have no evidence before me that it is impossible for her to pay the money."[4]  Consequently, he

---

[3] Earlier in the hearing, defense counsel repeated his assertion that the defendant had lost her job, but he never introduced any evidence to that effect or stated that it had occurred before she failed to make two of her weekly restitution payments.  The assistant district attorney assisting the probation officer stated in his closing argument:  "[Y]ou may recall during the course of the sentencing hearing [following the plea], she represented that she worked for N&J Bookkeeping, which is her own company, not a company that she could conceivably be fired from.  And now she's claiming that's why she can't pay the money that she's promised to pay."  Defense counsel responded, "[M]y client informs me that she does not own the business which she was fired from."  The judge did not make a finding on the issue, nor does the record contain a transcript of the plea or sentencing hearing.

[4] The judge also stated, in pertinent part:  "[T]here was evidence that at that time she had won the lottery.  So I am not convinced that she did not have the ability to pay $1,000 a week, which she specifically said that she could pay."

vacated the order of probation and asked for the probation officer's recommendation as to disposition.

The probation officer asked for a sentence of three to five years, reminding the judge that at the time the defendant pleaded guilty:

> "[T]he court was quite clear with its concern with regarding this order.  That the court wanted to make the [victim] whole and was going to take any attempt to make him whole. . . .  And as the article suggests, [the defendant] didn't accept responsibility.  And if that's the case, Your Honor, placing her on probation again is not going to drive that point home any clearer than it would have been on the day that contract was signed.
>
> "So for those reasons, I'm asking the sentence be imposed."

Defense counsel asked that the defendant be reprobated.

The judge then reviewed the defendant's record, which included being placed on probation in 1999 for an attempted larceny conviction; in 2005 after charges of larceny over $250, uttering, and forgery were continued without a finding; in 2013 for two larceny by check convictions; and for a different larceny over $250 conviction.  The judge stated, "She's been placed on probation quite a few times . . .[and] it was very compassionate of her brother[,] who has been the victim of this, not to request jail time."  Yet, he continued, after she had been given time to carefully consider her plea and had agreed that she could make the required weekly payment, she "makes one payment and that's it . . . . [a]nd then takes it to the press,

which is what she did, to threaten her brother." The judge sentenced the defendant to a term of three and one-half to five years in State prison.[5]

Discussion. 1. Failure to make restitution. The judge, who had also accepted the defendant's guilty plea, had ample evidence to support his finding, by a preponderance of the evidence, that the defendant did not make the required restitution payments and thus had violated that condition of her probation. See Commonwealth v. Durling, 407 Mass. 108, 111-112 (1990). We reject the defendant's argument, under Commonwealth v. Henry, 475 Mass. 117 (2016), that the judge abused his discretion by failing to consider, at the final probation violation hearing, the defendant's claimed inability -- unsupported by any evidence -- to make the payments. Under Henry, at a restitution hearing, "[w]here a defendant claims that he or she is unable to pay the full amount of the victim's economic loss, the defendant bears the burden of proving an inability to pay." Id. at 121. Nothing in Henry, which requires that a judge determine the extent of a defendant's ability to make restitution, required the judge here, in the

---

[5] On appeal, the defendant challenges only the findings of violations, not the resulting disposition. Once a violation is found, "[h]ow best to deal with the probationer is within the judge's discretion." Commonwealth v. Durling, 407 Mass. 108, 111 (1990).

absence of any new evidence on the point, to look behind the defendant's own original representation and agreement that she was able to pay the specified amounts. See id. at 118, 121.

Under Henry, "[t]he defendant may be required to report to his or her probation officer any change in the defendant's ability to pay, and the probation officer may petition the judge to modify the condition of probation . . . based on any material change in the probationer's financial circumstances." Id. at 126. Here, however, instead of reporting any changed circumstance to her probation officer pursuant to Henry, or seeking modification of probation conditions, the defendant simply failed to make the payments that she had agreed a few weeks earlier she could make, and then, once charged with the violation of that probation condition, she offered no actual evidence of her inability to make the payments. See Commonwealth v. Avram A., 83 Mass. App. Ct. 208, 210, 211-214 (2013) (affirming finding that juvenile had violated restitution condition of probation, where juvenile offered no evidence of inability to pay, other than evidence of small bank account, out of which he had made no payments).

We do not agree with the defendant's claim that she presented such evidence by means of her previously-filed financial affidavit; nowhere within it did she state that she was unable to make the payments. Nor did the defendant support

her motion to modify probation conditions, which she filed more than two weeks after the notice of probation violation had issued and which was denied on September 11, with any affidavit or other evidence of inability to pay; the assertions of her counsel are not evidence.  See id. at 212.

Section 6(B) of the Guidelines for Probation Violation Proceedings in the Superior Court (2016), http://www.mass.gov/service-details/guidelines-for-probation-violation-proceedings-in-the-superior-court [https://perma.cc/FP63-D6UE], governing final probation violation hearings, codifies preexisting practice by calling for an evidentiary hearing.[6]  See, e.g., Commonwealth v. Ventura, 465

---

[6] Section 6(B) provides in pertinent part:

"A final violation hearing shall consist of two parts: (1) an evidentiary hearing to adjudicate whether the alleged violation has occurred; and (2) upon a finding of violation, a dispositional hearing. . . .

"The probation officer shall have the burden of proving that a probationer has violated one or more conditions of probation by a preponderance of evidence.  At the request of a probation officer, or when required by G. L. c. 279, § 3, the District Attorney may participate in the presentation of evidence or examination of witnesses. Hearsay evidence shall be admissible at a Violation Hearing as permitted under Sections 802 through 804 of the Massachusetts Guide to Evidence, or when determined by the judge to be substantially reliable.  The probationer shall have the right to cross examine any witnesses called by the probation officer, including the probation officer; the right to call witnesses; the right to present evidence favorable to the probationer; the right to testify; and the right to make closing argument on the issue of whether a

Mass. 202, 203-204 (2013).  A judge conducting such a hearing, no less than the probationer, is entitled to require evidence of an alleged violation, as well as evidence of any defense thereto.  Here the defendant offered no evidence at all in support of her defense of inability to pay restitution.

We therefore see no error in the judge's finding that the defendant violated the restitution condition of probation, including his implicit finding that the nonpayment was wilful, as is required for the nonpayment to warrant revocation.[7]  See Henry, 475 Mass. at 121, 124 n.6.

2.  Violation of no-contact condition.  The defendant argues that the judge violated the defendant's free speech

---

violation has been proved by a preponderance of evidence."
(Footnote omitted.)

[7] As the Supreme Judicial Court has recently observed, "wilfulness" does not "have a consistent meaning in our jurisprudence."  Millis Pub. Schs. v. M.P., 478 Mass. 767, 776 (2018).  "[S]ome definitions focus on the actor's purpose, while others focus only on whether the actor's conduct was voluntary or intentional."  Ibid.  We read Henry, and the decisions it relies upon, as indicating that violation of a probation condition involving the payment of money is wilful where the probationer has not shown an inability to pay or that the nonpayment was without fault or otherwise justified.  Henry, 475 Mass. at 121-122, citing Bearden v. Georgia, 461 U.S. 660, 669 n.10 (1983).  See Commonwealth v. Gomes, 407 Mass. 206, 212-213 (1990).  See also Commonwealth v. Canadyan, 458 Mass. 574, 578-579 (2010).  The Henry court also cited Avram A., 83 Mass. App. Ct. at 212-213, as a case involving a wilful violation.  Henry, 475 Mass. at 124 n.6.  In short, as stated in Henry, "the defendant bears the burden of proving an inability to pay."  Id. at 121.

rights under the Federal and State constitutions when he found that she had violated the no-contact condition by making statements about the victim in an article published in a newspaper. She contends that she was not attempting to contact the victim, but was merely exercising her right to free speech in a public forum by responding to the victim's disparaging remarks that appeared in an earlier article in the same newspaper. On these specific facts, we disagree.

The defendant's constitutional argument is that her statements to the newspaper, because they did not constitute a constitutionally unprotected "true threat," could not be viewed as violating the no-contact condition. Although the defendant is correct that her remarks were not a "true threat,"[8] she overlooks an important principle governing a probation condition such as hers.

"Judges are permitted significant latitude in imposing conditions of probation, . . . and '[a] probation condition is not necessarily invalid simply because it affects a

---

[8] "The United States Supreme Court has defined 'true threats' as 'those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" Commonwealth v. Walters, 472 Mass. 680, 690-691 (2015), quoting from Virginia v. Black, 538 U.S. 343, 359 (2003) (Black). O'Brien v. Borowski, 461 Mass. 415, 423-424 (2012). The First Amendment "permits a State to ban a 'true threat.'" Black, 538 U.S. at 359, citing Watts v. United States, 394 U.S. 705, 708 (1969) (per curiam).

probationer's ability to exercise constitutionally protected rights.'"  Commonwealth v. Rousseau, 465 Mass. 372, 389-390 (2013) (quotation omitted).  Courts have previously upheld conditions of probation that affect First Amendment rights so long as they are "reasonably related to a valid probation purpose."  Commonwealth v. Power, 420 Mass. 410, 417 (1995), cert. denied, 516 U.S. 1042 (1996).  See Commonwealth v. Obi, 475 Mass. 541, 547-548 (2016).  "The principal goals of probation are rehabilitation of the defendant and protection of the public."  Commonwealth v. Lapointe, 435 Mass. 455, 459 (2001).  Accord Rousseau, 465 Mass. at 390.  A probation condition forbidding contact with, including threats to, the victim has a clear rational relationship to both of these goals: encouraging the defendant's acceptance of responsibility for the crime and protecting the victim, as a member of the public, from further harm, whether emotional, physical, or financial, at the hands of the defendant.  The defendant does not argue that these are not valid goals, or that the no-contact condition, as applied here, trenched more broadly on her free speech rights than necessary to achieve these goals.

"[N]o contact" probation conditions, as well as "the term 'no contact' in the related context of G. L. c. 209A protective orders," have been read broadly "to foreclose a myriad of potential encounters, engagements, or communications between

people." Commonwealth v. Kendrick, 446 Mass. 72, 75-76 (2006).
See Commonwealth v. Consoli, 58 Mass. App. Ct. 734, 741 (2003)
("Our broadly protective interpretation of 'contacts,' an
interpretation fully consistent with the statutory purpose [of
G. L. c. 209A], means that one cannot undermine a no contact
order by the simple expedient of ricocheting prohibited comments
off of third parties").

The defendant here makes no argument that the no-contact
condition of probation was insufficiently clear to put her on
notice that contact made through her directing comments at the
victim through a newspaper article was prohibited. See
Kendrick, 446 Mass. at 75, quoting from Commonwealth v. Orlando,
371 Mass. 732, 734 (1977) (No-contact probation condition
constitutionally sufficient where, although "imprecise," it
provided "comprehensible normative standard so that [people] of
common intelligence will know its meaning"). The probation
officer had warned the defendant that contact through third
parties was prohibited. She nevertheless took the initiative to
contact the newspaper to make statements about the victim that
he could, and did, reasonably understand as threats.[9] Indeed,

---

[9] If, for example, a reporter had randomly stopped the
defendant on the street to ask her view on some unrelated matter
of public interest, and the defendant's response had been
published in a newspaper and thereby come to the victim's
attention, even foreseeably, a different case would be
presented.

the judge found that her statements constituted "issuing [the victim] a threat." As defense counsel conceded before this court at oral argument, the defendant should reasonably have known that her statements to the newspaper about the victim would come to the victim's attention.[10] We thus see no error in the judge's finding and conclusion that, in these circumstances, the defendant's remarks violated a valid no-contact condition of probation.

Conclusion. The judge did not err in revoking the defendant's probation based on his well-supported findings that the defendant had violated her probation conditions by failing

---

[10] The defendant nevertheless argues that there was insufficient proof of her intent to make a threat; she notes that a conviction under the threat component of the criminal stalking statute, G. L. c. 265, § 43(a)(2), requires proof of intent both to place the victim in fear and to communicate a threat to the victim. See Walters, 472 Mass. at 692-693. But the defendant does not explain why those intent requirements, which serve in part to confine the reach of the stalking statute to constitutionally-unprotected "true threats," id. at 691-692, should apply in the context of an alleged violation of a no-contact condition of probation, where a defendant's constitutional rights are subject to reasonable restrictions. We think the cases concerning no-contact provisions of G. L. c. 209A orders are a better source of guidance. See, e.g., Kendrick, 446 Mass. at 76 (defendant violates no-contact provision of G. L. c. 209A order by communicating by any means with protected person; proof of intent to violate order is not required, but defendant could not be found in violation if he neither knew nor reasonably should have known that his conduct would result in contact with protected person). See also Commonwealth v. Silva, 431 Mass. 194, 200 (2000) (proof of intent to violate G. L. c. 209A order not required; proof that act constituting violation was voluntary suffices).

to adhere to the restitution payment schedule and the terms of the no-contact condition.

Order revoking probation and
imposing sentence affirmed.